[Civ. No. 21471. First Dist., Div. Two. May 18, 1964.]

LORRAINE ROMAN CHASE, Plaintiff and Appellant, v. BANK OF AMERICA, Defendant and Respondent.

Maurice H. Hardeman and Leon E. Shiells for Plaintiff and Appellant.

Samuel B. Stewart, Charles E. Cooper, Theodore Sachsman and Neal L. Petersen for Defendant and Respondent.

AGEE, J.—On February 20, 1956, plaintiff and her then husband declared a homestead on certain real property (Civ. Code, §§ 1262-1264). On July 22, 1958, they executed a deed of trust thereon as security for a loan. On December 14, 1958, the husband died.

On February 27, 1961, defendant-respondent, Bank of America, filed suit against plaintiff on an unsecured obligation and attached said real property. The bank thereafter obtained judgment for $2,010.48.

On July 14, 1961, after due proceedings, the real property was sold at a trustee's sale to satisfy the debt for which the deed of trust was security. After such satisfaction, a balance of $6,698.02 remained in the hands of the trustee.

On August 10, 1962, plaintiff filed the instant action to obtain this balance as part of her $12,500 homestead exemption. Respondent bank then caused a writ of execution to be issued on its judgment and levied upon the trustee. The latter deposited the money in court.

Plaintiff appeals from the judgment herein, which orders that the bank's judgment should be first satisfied out of the excess proceeds of the trustee's sale and the balance paid to her.

The parties agree that the trustee's sale herein is a "forced sale" of the class designated in section 1241, subdivision 3, of the Civil Code, which provides in part that the homestead is subject "to execution or forced sale" in satisfaction of "debts secured by encumbrances on the premises executed and acknowledged by husband and wife, ..."

▉ Appellant contends, and respondent denies, that the disposition of the proceeds of this "forced sale" is governed by the provisions of section 1256 of the Civil Code.

This section provides: "If the sale is made, the proceeds thereof must be applied in the following order of priority, first, to the discharge of all liens and encumbrances, if any, on the property, second, to the homestead claimant to the amount of the homestead exemption, third, to the satisfaction of the execution, and fourth, the balance, if any, to the homestead claimant."

Respondent, on the other hand, contends that section 1256 applies *only* to the proceeds of an execution sale held pursuant to the provisions of section 1245 of the Civil Code et seq., and that section 1245 expressly excludes sales of the

classes enumerated in section 1241.[1] In other words, respondent's position is that there is *no* statutory exemption of the excess proceeds resulting from a sale of the class involved herein.

This contention was answered adversely to respondent in *White* v. *Horton*, 154 Cal. 103 [97 P. 70, 18 L.R.A. N.S. 490], decided in 1908.[2] This was an action to foreclose a mortgage on homesteaded property. While the action was pending a judgment creditor started proceedings under sections 1245 et seq. to have the property sold under a writ of execution issued upon the judgment. The preliminary steps of an appraisal and report (Civ. Code, §§ 1245-1252) had been taken and the next step would have been to obtain an order directing the sale of the property under the execution (Civ. Code, § 1254). At this point, the parties stipulated that all of their rights could be considered and determined in the foreclosure action.

The trial court in *White* v. *Horton* applied the proceeds of the mortgage foreclosure sale in the following order of priority, first, to the satisfaction of the mortgage, second, to the satisfaction of the judgment, and third, to the homestead claimant.

The Supreme Court, expressly basing its decision upon section 1256, reversed the lower court and held that the proceeds of the sale should have been applied (1) to the satisfaction of the mortgage, then (2) to the payment of the amount of the homestead exemption and then (3) to the satisfaction of the judgment.

Respondent contends that *White* v. *Horton* is distinguishable because there the judgment creditor had commenced proceedings for an execution sale and in the instant case this was not done. We think that this is a distinction without a difference.

In the instant case respondent had the legal right to commence such proceedings but elected not to do so. In *White* the judgment creditor, after taking the necessary preliminary steps, elected not to continue with the proceedings.

We conclude, as did the Supreme Court in *White* v. *Horton*, that section 1256 of the Civil Code is applicable to the

---

[1]Section 1245 refers to ''an execution for the enforcement of a judgment obtained in a case *not* within the classes enumerated in section 1241 [which] is levied upon the homestead, ...'' (Italics added).

[2]The 1945 amendment to section 1256 does not affect the applicability herein of *White* v. *Horton*.

excess proceeds resulting from a forced sale of homesteaded property pursuant to section 1241, subdivision 3, of the Civil Code and that the lower court erred in ruling that respondent's judgment had priority over appellant's homestead claim in the distribution of the excess sale proceeds.

The trial court also erred when it failed to apply section 1257 of the Civil Code to the instant case.

In a "Memorandum Opinion," the court correctly states that section 1265 of the Civil Code applies only to voluntary sales by the owner and not to a sale such as that involved herein. It also states that, even if this section did apply, appellant could not prevail because "She took no effective steps to gain possession of the funds within the six months period or within any reasonable extension thereof."

The opinion does not even mention section 1257 and it is evident that the trial court considered only the "six months" provision contained in section 1265.

Section 1265 provides that the excess proceeds of a voluntary sale "shall be exempt to the owner of the homestead for a period of six months *next following such sale.*" (Italics added.)

Section 1257, on the other hand, applies to "forced" or involuntary sales. It provides as follows: "The money *paid* to the claimant [as provided in section 1256] is entitled, for the period of six months *thereafter,* to the same protection against legal process and the voluntary disposition of the husband, which the law gives to the homestead." (Italics added.)

The significance of the difference in the wording of these two sections is apparent. In the event of a voluntary sale, the commencement of the six months' period is the date of the sale. In the event of an involuntary sale, said period commences when the money is *paid* to the homestead claimant.

We think it is clear that the word "thereafter" in section 1257 refers to and is intended to mean the date when the "money [is] paid to the claimant."

Such difference in the wording of the two sections is logical. In the case of a voluntary sale, the owner has control of the sale and can usually obtain the proceeds thereof without delay. However, by arranging for delayed payments by the buyer, the purpose of the time provision would be defeated if the exemption period did not commence to run until payment was actually made.

■ The general purpose of the exemption period is stated by the Supreme Court in *Thorsby* v. *Babcock*, 36 Cal. 2d 202, 205, 206 [222 P.2d 863], as follows: "[O]bviously the true purpose of giving the owner that time is to permit him to move his family to another home with the retention of protection from forced sale. ... Clearly, the Legislature has not required a purchase of other property immediately. Rather it has given the seller the reasonable time of six months within which to complete the transaction.

■ However, in the case of a forced or involuntary sale, the owner has no control over the excess proceeds, if any, and must wait to obtain them from the sheriff, commissioner, trustee, etc. It would manifestly be unreasonable to commence the running of the exemption period before the homestead claimant obtains payment.

The injustice which would result by the placing of any other interpretation upon section 1257 is made apparent by the factual situation involved herein.

■ The trustee's sale was held on July 14, 1961, and this action was filed on August 10, 1962, 13 months later. During this period there were many negotiations for settlement. The situation was complicated by the claim of Santa Clara County for money paid for the support of appellant's six children. Respondent bank, although contending that appellant should have started litigation sooner, did not itself initiate any affirmative steps to obtain any of the sale proceeds.

Appellant was having some personal difficulties during the period in question. After being released from Agnews State Hospital and the Santa Clara County jail, she contacted the local branch of the bank which was the beneficiary under the deed of trust. This was in August 1961. She was advised to go to the bank's main office in San Francisco. Mr. Derham of that office advised her that she would have to get a release from the Bank of America (respondent) in order to obtain any of the funds.

It was stipulated that the first time appellant consulted with her attorney in connection with this matter was in the month of June 1962. Action was promptly filed thereafter.

Respondent has not suffered any legal prejudice or change of position by reason of appellant's failure to commence this action any earlier.

Judgment reversed.

Shoemaker, P. J., and Taylor, J., concurred.