[Civ. No. 27388. First Dist., Div. Four. Sept. 30, 1970.]

BRUCE SCHOENFELD et al., Plaintiffs and Appellants, v.
J. R. NORBERG, Defendant and Respondent.

## COUNSEL

Gross, Gross, Rose & Schwartz and Harry M. Gross for Plaintiffs and Appellants.

Warwick, Devane & Warwick and Benjamin Warwick for Defendant and Respondent.

## OPINION

CHRISTIAN, J.—Respondent Norberg took a money judgment in the San Francisco Superior Court against Bruce Schoenfeld, one of the appellants. A writ of execution, issued for enforcement of that judgment, was levied upon appellants' residence in Marin County. Thereupon appellants commenced an action in the Marin Superior Court, alleging that their property was a protected homestead and seeking an injunction against the sale thereof. The Marin court gave judgment for appellants; the appellate court reversed (*Schoenfeld* v. *Norberg* (1968) 267 Cal.App.2d 496 [72 Cal.Rptr.

924]), holding that although the homestead was valid the sale should not have been restrained where there had been no determination of the value of the property and "Norberg, when restrained, still had six days left in which to retrace his steps and follow the statutory outline for the satisfaction of his judgment." (267 Cal.App.2d at p. 499.)

The "statutory outline" referred to by the Court of Appeal appears in Civil Code sections 1245 to 1259. ■ According to section 1245, the judgment creditor may "apply to the superior court of the county in which the homestead is situated" for an appraisal which may result in a sale after partition (§ 1253) or otherwise (§ 1254) if the property is found to have value exceeding the exempted amount.

Respondent thereupon petitioned the Marin court[1] for appraisal and sale of the homestead. By stipulation a single appraiser was appointed; he reported the fair market value of the property to be $35,000. On respondent's motion, the court ordered sale of the homestead property. The order recited that "said premises have an appraised value of THIRTY-FIVE THOUSAND DOLLARS ($35,000.00), an amount that exceeds the aggregate amount of all liens and encumbrances on the property by more than the applicable homestead exemption of TWELVE THOUSAND FIVE HUNDRED DOLLARS ($12,500.00)."[2] Liens and encumbrances on the premises were found to total $9,099 and the property was found not to be subject to division without material injury. The order provided for a minimum bid of $21,599 (the amount of the homestead exemption plus the aggregate amount of all liens and encumbrances on the property). The community property or joint tenancy character of the property was disputed. Nevertheless the court expressly withheld determining "at this time what portion of [the property] is subject to the sale."

■ The record shows that respondent's petition for appointment of an appraiser was filed before the remittitur was issued in the former appeal. Appellants therefore contend that the court was without jurisdiction to entertain the petition. But the trial court took no action prior to the issuance of the remittitur. Thus, the question is not of an act in excess of jurisdiction, but of possible premature filing. Filing of the petition before the issuance of the remittitur did not prejudice any of appellants' substantial rights; the question will in any event not be considered on appeal where it was not raised in the court below. (*Kelley* v. *Upshaw* (1952) 39

---

[1] The petition was filed in the pending action for injunction.

[2] This amount, concededly applicable to the present case, has been increased to $20,000. (Civ. Code, § 1260, as amended by Stats. 1970, ch. 319, effective January 1, 1971.)

Cal.2d 179, 188 [246 P.2d 23]; *Mears* v. *Jeffry* (1947) 80 Cal.App.2d 610, 616 [182 P.2d 294].)

■ Appellants assert that the petition for the appointment of appraisers was not served as required by Civil Code section 1248. But appellants appeared and resisted the petition on the merits, while claiming that proper notice had not been given. The notice point was waived by making a general appearance. (1 Witkin, Cal. Procedure (1954) Jurisdiction, § 66, p. 337.)

■ Appellants' main contention is that it was error for the court to order a sale without determining whether the property is community or joint tenancy. Civil Code sections 1245 to 1259 make no mention of the procedure to be followed in executing upon homesteaded property held in cotenancy between the judgment debtor and another. Nevertheless, we have concluded that appellants' contention must be sustained. ■ If the levy is upon community property, the entirety is subject to execution for the husband's debt. (*Grolemund* v. *Cafferata* (1941) 17 Cal.2d 679, 689 [11 P.2d 641]; *In re Rauer's Collection Co.* (1948) 87 Cal.App.2d 248, 256 [196 P.2d 803].) But if the property is held in joint tenancy, the wife's interest, being her separate property, is not liable for the husband's debt; in that event, only the husband's interest may be sold. (*Strangman* v. *Duke* (1956) 140 Cal.App.2d 185, 188 [295 P.2d 12]; *In re Rauer's Collection Co., supra.*) ■ In the latter situation the sale would effect a severance of the joint tenancy, and the purchaser would become a tenant in common with the wife. (*Strangman* v. *Duke, supra.*) Partition could then be obtained. (Code Civ. Proc., § 752.)

The order made by the court in the present case is self-contradictory; it authorized the sale of the entire property, but at the same time specified that "it is not determined at this time whether the property is a true joint tenancy or whether it is community property and it is not determined at this time what portion of it is subject to the sale." ■ Without determining that the property was community, the court could not effectively order the entirety sold to satisfy a judgment against the husband. Even though appellants assertedly took title by means of an instrument in form of a joint tenancy deed, that form would not be conclusive evidence that the property was held in joint tenancy; if it could be shown that the parties intended to hold the property as community, that intent would prevail. (*Estate of Baglione* (1966) 65 Cal.2d 192, 195 [53 Cal.Rptr. 139, 417 P.2d 683]; *Tomaier* v. *Tomaier* (1944) 23 Cal.2d 754 [146 P.2d 905].) Until the nature of the judgment debtor's interest is determined, any execution sale would be hampered by the inability of any prospective bidder to ascertain what he was to bid on.

It is true that two decisions (*Blue* v. *Superior Court* (1956) 147 Cal.App. 2d 278, 283-284 [305 P.2d 209], and *Strangman* v. *Duke, supra,* 140 Cal. App.2d 185, 192-193) indicate that the court should not, in a proceeding for appointment of an appraiser and sale of homestead property under execution, determine the extent of the debtor's interest in the property; it is broadly suggested in the two decisions that the court should merely order the undetermined interest sold, leaving the purchaser to bring a subsequent action in order to find out what he had bought. But both cases dealt with fraudulent conveyances, and Civil Code section 3439.09 specifically gives a creditor the choice of attacking a fraudulent conveyance either by having the conveyance set aside, or by disregarding the conveyance and levying execution upon the property conveyed; it was held that if the issue of the effectiveness of the claimed fraudulent conveyance could be decided in an execution proceeding, section 3439.09 would become meaningless. (*Blue* v. *Superior Court, supra,* at p. 284.) Moreover, it would create a "practical limitation upon the bidding" if the purchaser were required, in a subsequent action, to establish that the order of sale was not res judicata as to the fact of fraud. (*Strangman* v. *Duke, supra,* at p. 192.)

In the present case, there is no issue of a fraudulent conveyance; hence, the rationale of *Blue* and *Strangman* is inapplicable. Moreover, failure to define the interest being sold would itself, in the present circumstances, create a "practical limitation upon the bidding"; any purchaser would be buying an undetermined interest and would be forced to pursue a subsequent action against the cotenant to ascertain what he bought. ■ Therefore, where the issue is whether property held by husband and wife is joint tenancy or community, the trial court may make that determination and specify in the order the interest being sold. (See *In re Rauer's Collection Co., supra,* 87 Cal.App.2d 248.) Of course, the cotenant would not be bound by the determination unless he had been made a party to the proceeding. We note that Civil Code section 1248 makes no provision for serving the cotenant in order to bring his rights before the court for determination, but joinder of the cotenant may be compelled by the court where necessary to a complete determination of the controversy. (Code Civ. Proc., § 389.) In the present case the cotenant wife is already a party.

■ We conclude, therefore, that the court erred in not determining whether the property was community or joint tenancy before ordering a sale; the judgment must be reversed for this determination.

If the property is determined to be joint tenancy, there is a further question of whether it can be sold under Civil Code sections 1254, 1255 and 1256. These sections provide as follows:

"If, from the [appraiser's] report, it appears to the judge that the land

claimed exceeds in value, over and above all liens and encumbrances thereon, the amount of the homestead exemption, and that it cannot be divided, he must make an order directing its sale under the execution." (Civ. Code, § 1254.)

"At such sale no bid shall be received, unless it exceeds the amount of the homestead exemption plus the aggregate amount of all liens and encumbrances on the property." (Civ. Code, § 1255.)

"If the sale is made, the proceeds thereof must be applied in the following order of priority, first, to the discharge of all liens and encumbrances, if any, on the property, second to the homestead claimant to the amount of the homestead exemption, third, to the satisfaction of the execution, and fourth, the balance, if any, to the homestead claimant." (Civ. Code, § 1256.)

Where the property is under single ownership or is otherwise subject to execution in its entirety, application of sections 1254, 1255 and 1256 poses no problem. The homestead exemption and the encumbrances would be subtracted from the appraiser's valuation of the property to determine whether the property could be sold; the sum of the homestead exemption and encumbrances would also be the minimum bid.[3] But when the property is held in cotenancy, such as a tenancy in common or a joint tenancy, and only one cotenant's interest is to be sold, should the homestead exemption and encumbrances be applied against the total value of the property or the value of the interest to be sold?

Appellants contend that the deductions are to be subtracted from the interest to be sold. Since the homestead exemption and encumbrance total $21,599, and the husband's interest in this case is worth only $17,500, it is contended that there can be no sale. Respondents argue that the $21,599 must be subtracted from the value of the entire property—$35,000—even if only a half interest is to be sold; therefore, since the value of the property exceeds the sum of the homestead exemption and encumbrance, respondent claims that the husband's interest may be sold to satisfy the judgment. Application of the homestead exemption and discharge of liens and encumbrances involves different policy and legal considerations and will be discussed separately.

The question whether a homestead exemption applies to the property as a whole or only to the judgment debtor's interest therein has been considered in two previous decisions with inconsistent results. *In re Rauer's Collection*

---

[3]In the present case, there is no question that a sale could be ordered if appellants' property is found to be community property, and thus subject, in its entirety, to execution to satisfy the husband's debt. The value of the property ($35,000) exceeds the total of the homestead exemption and the encumbrance ($21,599). The minimum bid would be $21,599.

*Co., supra,* 87 Cal.App.2d 248, held that the exemption is of the homesteaded property, rather than the debtor's interest therein; therefore, the debtor's interest was held subject to execution sale if the property was valued in excess of the statutory exemption (there being no problem of encumbrances in *Rauer*). *Strangman* v. *Duke, supra,* 140 Cal.App.2d 185, also recognized that a husband's declaration of homestead on joint tenancy property owned by husband and wife extends to the interests of both spouses. (*Watson* v. *Peyton* (1937) 10 Cal.2d 156, 159-160 [73 P.2d 906]; *Johnson* v. *Brauner* (1955) 131 Cal.App.2d 713, 722 [281 P.2d 50]).[4] Nevertheless it was held that the husband was entitled to the entire exemption in an execution sale. "There is no provision in our statute for apportionment of the exemption in any situation . . . [a]nd one who is entitled to make such a declaration is declared to be entitled to an exemption from enforcement of debts to a specified extent. . . ." (*Strangman* v. *Duke, supra,* at pp. 188-189.) The result is that if the husband's creditors first attempt to execute on the homesteaded property, the husband gets the benefit of the exemption; if the wife's creditors move first, she gets it. (*Strangman* v. *Duke, supra,* at p. 190.)

Respondent argues that while the husband is entitled to the full benefit of the homestead exemption under *Strangman,* this does not mean that the exemption is applied solely to his undivided interest; according to the argument, the exemption is still to be subtracted from the full value of the property in determining whether the husband's interest may be sold. Applying the exemption to the full value of the property is the same as applying half the exemption to the value of the husband's half interest; regardless of the computational method, the husband receives the benefit of only half of the exemption, contrary to the holding in *Strangman* that an exemption cannot be apportioned among cotenants.

. *Strangman* and *Rauer* appear to us to be irreconcilable.[5] *Strangman* will

[4]Under Civil Code sections 1238 and 1239, a husband cannot declare a homestead on the wife's separate property without her joining in the declaration. Nevertheless, it has been held that a husband may, acting alone, declare a homestead on joint tenancy property that would extend to the wife's undivided interest. (*Watson* v. *Peyton, supra,* 10 Cal.2d 156, 158-160.) The reasoning was that since section 1238 defines "property" to include "any freehold title, interest, or estate which vests in the claimant the immediate right of possession, even though such a right of possession is not exclusive," the husband had an "estate" in the entire property derived from his right of possession in the entire property.

[5]In *Strangman* the husband alone declared the homestead on joint tenancy property held by both spouses, while in *Rauer* the wife joined in the declaration. Hence, an argument could be advanced that where husband alone declares the homestead, the full exemption is applied to his interest, while the exemption is applied to both husband and wife's interest (i.e., the entire property) where both join in the declaration. This argument is untenable in light of the rule that a husband's declaration protects the entire property owned in joint tenancy by spouses. (See fn. 4, *supra.*)

be followed as preferable. ■ The purpose of the exemption is to protect the title or interest of the claimant from the demands of creditors (*Squibb* v. *Squibb* (1961) 190 Cal.App.2d 766, 769 [12 Cal.Rptr. 346]), and the statutes are to be liberally construed to protect the claimant and his family (*Estate of Kachigian* (1942) 20 Cal.2d 787, 791 [128 P.2d 865]).

Moreover, an analysis of the statutes supports the *Strangman* conclusion that where execution is upon an undivided interest in property, the homestead exemption is not to be apportioned; the debtor is entitled to claim the full exemption. Civil Code section 1238 allows a cotenant to declare a homestead on property held in joint tenancy or tenancy in common; Civil Code section 1260 provides that each head of household is entitled to a specific homestead exemption. ■ Thus, while a husband and wife cannot declare two homesteads, either on the same property or on different property (*Strangman* v. *Duke, supra,* 140 Cal.App.2d 185, 189; Civ. Code, § 1263), the statutes contemplate that where members of different families hold property in joint tenancy or tenancy in common, there might be more than one homestead exemption claimed on the same property. It has been held that each tenant of an undivided interest is entitled to select a homestead on jointly held property. (*Squibb* v. *Squibb, supra,* 190 Cal.App.2d 766, 769.) If each homestead claimant residing on jointly owned property were not allowed to claim the full exemption in an execution sale of his interest, an unreasonable distinction would be established as to the protection afforded families who owned property in the entirety and families who owned property in conjunction with others. ■ Homestead protection does not depend on the character of the declarant's title. (*Bell* v. *Wilson* (1916) 172 Cal. 123, 126 [155 P. 625]; *Strangman* v. *Duke, supra,* at pp. 188-189; *In re Rauer's Collection Co., supra,* 87 Cal.App.2d 248, 261.)

It is clear, therefore, that if the husband in this case had owned the property with a person other than his wife, he would be entitled to the full exemption in an execution sale. ■ The wife's interest in joint tenancy property is no more subject to execution for the husband's debt than would be the interest of any other person; no basis exists for affording the creditor a stronger hand as against property held in cotenancy with the claimant's spouse than as against property in which the cotenant is not married to the claimant.

■ We conclude that Civil Code section 1254 requires that the interest *subject to sale* must exceed in value the statutory homestead exemption

Moreover, such a distinction would have the effect of providing more protection where the husband alone declares the homestead than where a husband and wife together act to protect their property.

specified in section 1260 before the interest may be sold under execution. This interpretation harmonizes section 1254 with sections 1255 and 1256, which clearly require that the minimum bid at the sale exceed the homestead exemption.[6]

We move then to a consideration of the liens and encumbrances provisions of sections 1254, 1255 and 1256. Prior to 1945, encumbered homestead property was sold subject to the encumbrances; sections 1254 and 1255 then did not provide for consideration of encumbrances in determining whether a sale could be ordered or what the minimum bid would be; likewise, section 1256 did not formerly require that first priority in distributing proceeds of the sale go to discharge of encumbrances. (*Southern Pac. Mill. Co.* v. *Mulligan* (1940) 15 Cal.2d 729, 731 [104 P.2d 654]; *Martin* v. *Hildebrand* (1923) 190 Cal. 369, 372 [212 P. 618].) It was held that because a purchaser at an execution sale obtained only the interest of the judgment debtor, encumbrances and liens were unaffected by the sale. (*Martin* v. *Hildebrand, supra.*) Statutory language dealing with liens and encumbrances was added in 1945.[7] Although case law had, prior to 1945, established that a homestead could be declared on jointly owned property (see *Watson* v. *Peyton, supra*, 10 Cal.2d 156) the amendments appear to have been adopted without consideration of the problems they would cause in cases involving property held in cotenancy. The only cases dealing with the encumbrance provisions of sections 1254, 1255 and 1256 after the 1945 amendments involved situations where the entire property was subject to sale. (*See Van Bogaert* v. *Avery* (1969) 271 Cal.App.2d 492 [76 Cal. Rptr. 608]; *Chase* v. *Bank of America* (1964) 227 Cal.App.2d 259 [38 Cal. Rptr. 567]; *Shivell* v. *Hurd* (1954) 129 Cal.App.2d 320 [276 P.2d 895].) No cases have been found involving the discharge of liens and encumbrances on cotenancy property, where only one tenant's interest is subject to sale.

 One cotenant may encumber his undivided interest in property without the consent of the other tenants; the encumbrance affects his interest only. (*Haster* v. *Blair* (1940) 41 Cal.App.2d 896, 898 [107 P.2d 933]; 13 Cal.Jur.2d, Cotenancy, § 38, p. 325.) A creditor may levy only

---

[6]Where the respondent's argument, as well as the holding in *In re Rauer's Collection Co., supra*, 87 Cal.App.2d 248, break down is that they forget that only the debtor's interest may be sold in the execution sale. If section 1254 were interpreted to allow a sale if the entire property value exceeds the homestead exemption, then section 1255 would have to be treated as providing that no bid may be received unless it exceeds *half* of the homestead exemption; similarly, section 1256 would have to be interpreted to read ". . . the proceeds thereof must be applied . . . second, to the homestead claimant to the amount of *one-half* of the homestead exemption, . . ."

[7]Stats. 1945, ch. 789, pp. 1476-1477. The language appears in sections 1246, 1251, 1252, 1253 and 1260, as well as in sections 1254, 1255 and 1256.

on the interest of the debtor joint tenant (*Rupp* v. *Kahn* (1966) 246 Cal. App.2d 188, 195 [55 Cal.Rptr. 108]; 2 Miller and Starr, Current Law of California Real Estate, § 535, pp. 736-737). ■ Where an encumbrance affects only the debtor tenant's interest, it obviously must be discharged in full in an execution sale. In the present case, the encumbrance is a mortgage jointly given by both husband and wife on the entire property. Therefore the question arises whether the sale must net sufficient proceeds to discharge the entire encumbrance in order for the husband's interest to be sold or whether the encumbrance will be apportioned and only one-half of it discharged. Only the first alternative is workable. In the case of a joint encumbrance, each cotenant's interest, as part of the entirety, is vulnerable to sale for the total debt; a creditor may foreclose against one cotenant's interest to satisfy the debt. (Powell on Real Property, § 607, p. 630.) Therefore, the mortgage, while jointly given by husband and wife, constitutes an encumbrance on husband's interest. If only one-half of the debt secured by the encumbrance were discharged, the creditor could still go against the interest of the purchaser to obtain satisfaction of the other half of the debt. Such a result would be contrary to the requirement of section 1254 that all liens and encumbrances on the interest to be sold be discharged.

Therefore, we conclude that the husband's interest cannot be sold unless its value exceeds the amount of the joint encumbrance. The purchaser, having in effect paid off the entire encumbrance, would be entitled to contribution from the other tenant or tenants (in this case the wife). (*Conley* v. *Sharpe* (1943) 58 Cal.App.2d 145, 155-156 [136 P.2d 376]; *Jamison* v. *Cotton* (1933) 136 Cal.App.127, 129 [28 P.2d 39].)

We recognize that under the procedure we have outlined severe limitations are placed on the situations in which a sale of property held in co-tenancy between the judgment debtor-homestead claimant and another party could be ordered. For example, if the debtor held a one-half interest (as perhaps will be the case in a heavy majority of residential holdings), sale could not be ordered if a joint encumbrance exceeded one-half the value of the property. Moreover, even if an order of sale could be made, quite often no sale would be effected where the encumbrance is large because the bid that must be received (the total encumbrance plus the homestead exemption) would far exceed the actual value of the interest being sold. Nevertheless, no other procedure has been suggested that is consistent with the statutory language, which was apparently adopted without consideration of encumbrances on jointly owned property. ■ Under the facts which have been determined in this case, the property cannot be sold if it is held

in joint tenancy; the husband's interest does not exceed the sum of the joint encumbrance and the homestead exemption.

The order is reversed with directions to determine whether the property is held in joint tenancy or as community. If it is found to be community, it may be sold with a minimum bid of $21,599.

Devine, P. J., and Rattigan, J., concurred.