[Civ. No. 41800. First Dist., Div. Three. Aug. 28, 1979.]

WELLS FARGO BANK, Plaintiff and Respondent, v.
PAL INVESTMENTS, INC., Defendant and Appellant.

432

**COUNSEL**

Dawson, Maino, Chapman, Bishop, Katz & Kellenberger and Aaron L. Katz for Defendant and Appellant.

Tumlin & Catalano and Tracy N. Tumlin for Plaintiff and Respondent.

OPINION

WHITE, P. J.—This is an appeal from an order of the trial court directing that certain homesteaded property be sold pursuant to Civil Code section 1254.

The undisputed facts underlying the case are as follows: In 1967 William and Hildegard O'Halleran (husband and wife) executed and recorded a first deed of trust on their family residence securing a $29,000 indebtedness. In 1969, the O'Hallerans filed a declaration of homestead on the same property. In April 1971, Wells Fargo Bank, respondent's assignor, obtained a default judgment against the O'Hallerans in the amount of $5,000. An abstract of the judgment was recorded immediately.

In February 1973, the O'Hallerans executed a promissory note secured by a deed of trust on their home to appellant PAL Investments, Inc. for $20,000 with interest at 10 percent per year in consideration of a $20,000 loan from appellant. At that time Mr. and Mrs. O'Halleran were, respectively, president and secretary of PAL Investments, Inc. (hereafter PAL) and Mrs. O'Halleran's parents were the sole stockholders. The deed of trust was not recorded until September 1976.

In August 1976, respondent obtained a writ of execution pursuant to the 1971 judgment against the O'Hallerans and levied against their homesteaded property. Within the 60 days required by Civil Code section 1245 respondent filed a petition for appointment of appraisers. Appellant moved successfully to intervene and then moved the court for a determination of the effective liens and encumbrances of record on the property. Hearings were held on both the petition for appointment of appraisers and the motion for determination of liens in January and February 1977. The court order, filed March 21, 1977, found that the note and second deed of trust to appellant constituted a fraudulent conveyance as to respondent and as such were void. The court ordered that the house be sold, pursuant to Civil Code section 1254, because its appraised value exceeded the homestead exemption and all liens and encumbrances.

Appellant advances three contentions on appeal. PAL argues first that the trial court acted in excess of jurisdiction to determine whether any liens and encumbrances on the homestead constituted fraudulent conveyances, and, secondly, that even if the trial court did possess such jurisdiction, the conveyance at issue could not have been fraudulent as a

matter of law. Finally, appellant contends that the trial court should not have ordered the homestead sold.

■ After a careful examination of the record, including the reporter's transcript of the trial court proceedings, we find that we need not reach and decide appellant's second and third contentions because his first is correct and dispositive. Accordingly, we vacate the order.

The result we announce is compelled by the leading and often quoted authority *Blue* v. *Superior Court* (1956) 147 Cal.App.2d 278 [305 P.2d 209]. *Blue* holds that when a judgment creditor, as is respondent herein, elects to petition pursuant to Civil Code section 1245 et seq. thereby instituting a proceeding to apply the excess value of a homestead to the satisfaction of a judgment, the court is without authority to define the judgment debtor's interest in the property levied upon or turn the proceeding into a plenary suit in equity in the nature of a creditor's bill. (*Blue, supra,* at pp. 284-285.) *Strangman* v. *Duke* (1956) 140 Cal.App.2d 185, 192 [295 P.2d 12], is to the same effect.

In *Blue,* petitioner sought a writ of mandate to compel the trial court to vacate and set aside a purported judgment and to grant his motion to appoint appraisers pursuant to Civil Code section 1245 et seq. to appraise property upon which petitioner had caused an execution to be levied and upon which the real party in interest had filed a declaration of homestead. Petitioner's levy of execution was made pursuant to ·a judgment obtained against the husband of the real party in interest. The wife was not a party to that action. In his petition for appointment of appraisers, petitioner alleged that prior to the judgment the judgment debtor husband had conveyed the subject property to his wife without consideration and that the transfer was in fraud of creditors in that it rendered the husband insolvent. Petitioner further alleged that under the provisions of Civil Code section 3439.09, subdivision (a)(2), he was electing to disregard the conveyance by the judgment debtor to his wife and was levying upon the subject property. Wife, the real party in interest, with leave of court, answered and denied that the conveyance of the property was fraudulent.

The trial court found that the conveyance was for full and adequate consideration and not fraudulent, and that the judgment obtained by petitioner was a default and of no effect but had been rendered upon a purported note not signed nor delivered by the judgment debtor, and further found that the husband had no right, title or interest in the subject

property. Accordingly, the trial court quashed the writ of execution and held that petitioner was not entitled to any of the remedies under the homestead provisions. The Court of Appeal reversed.

The appellate court's reasoning was based on the fact that Civil Code section 3439.09 specifically gives a creditor the choice of attacking a fraudulent conveyance either by having the conveyance set aside, or by disregarding the conveyance and levying execution upon the property conveyed. At page 284, the *Blue* court concludes: "It is evident therefore that if his right to have the property appraised and then sold under execution may be defeated by the court, upon the proceedings for the appointment of appraisers, holding that there was no fraudulent conveyance, the provisions of section 3439.09 which we have quoted are rendered meaningless." The court pointed out that section 1245 et seq. makes no provision for a determination of whether the judgment debtor has an interest in the real property which his judgment creditor seeks to have appraised and sold under execution pursuant to those sections. Further, the court found that petitioner was not estopped from asserting that the trial court had acted in excess of jurisdiction because he did not seek to have the trial court determine what interest the judgment debtor had in the subject property but alleged the fraudulent character of the conveyance from husband to wife only to explain his election to pursue the remedy granted him by section 3439.09.

Apparently when respondent initiated section 1245 proceedings by his petition to appoint appraisers, he had no reason to suspect an election of remedies problem. PAL's note and deed of trust were not of record. However, it is clear from the clerk's transcript that on November 18, 1976, and before the appraisers were court appointed, PAL (appellant) put respondent on notice that the O'Halleran homestead was further encumbered by a "certain Deed of Trust . . . recorded on September 24, 1976, in the County of Santa Clara, at Book 302, Page 352, being document number 5420048, securing a Promissory Note of even date thereof, which is indicated as being February 10, 1973, said note being in the sum of $20,000.00."

The above quote is from appellant's affidavit in support of its motion to intervene (Code Civ. Proc., § 389.5), which was granted on December 28, 1976. Apparently at or near the same time appellant moved the court to determine liens and encumbrances on the homestead. (A memorandum of points and authorities is in the record but not the actual motion.) In any case, it is clear from this record that notwithstanding respondent's

knowledge of appellant's claimed lien or encumbrance, all three app-raisers' reports fail to report the amount of the same. Sections 1251 and 1252 of the Civil Code direct that the judge shall receive from the appraisers a written report showing the amount of *all* liens and encumbrances. The California Debt Collection Manual (Cont.Ed.Bar 1978) page 538, points out that the practice is to order a title company report showing the liens and encumbrances which is made available for use by the appraisers. We surmise that respondent did not update his title report to show the appellant's belatedly recorded deed of trust (recorded on Sept. 24, 1976). In any case, the court was made aware of appellant's deed of trust encumbering the homestead and its value in the proceedings that culminated in the order herein appealed.

We have reviewed the record at some length because we conclude that although at the outset respondent made no election, thereafter and certainly by the time of the hearing on January 28, 1977, respondent had clearly elected to exercise a creditor's right to "Disregard the conveyance and attach or levy execution upon the property conveyed." (Civ. Code, § 3439.09, subd. (a)(2).) Obviously, respondent decided not to bring a separate action in the nature of a creditor's bill to set aside or annul the PAL conveyance to the extent necessary to satisfy his claim. (See Civ. Code, § 3439.09, subd. (a)(1).) (The term "conveyance" is defined in Civil Code section 3439.01 in relevant part to include "mortgage . . . of tangible . . . property.")

Apparently respondent reasoned that he could obviate the problem of delay occasioned by a separate equitable action by somehow litigating the validity of PAL's asserted interest in the O'Halleran homestead in the section 1245 proceeding. However, *Blue* v. *Superior Court, supra,* does not permit such a solution. *Blue, supra,* at pages 284 and 286 teaches that when proceeding under section 1245 et seq. a court does not have the power to try and adjudicate any question of title.

Respondent, seeking to avoid our conclusion, argues here as he did in the trial court that because appellant moved to determine what liens and encumbrances existed on the homestead, this necessarily required a determination as to their validity. Respondent thereafter urges that appellant and not respondent introduced the issue of the February 1973 deed of trust being fraudulent and therefore appellant is estopped to now assert that the court exceeded its powers. We emphatically disagree. We are not certain whether respondent misreads or misrepresents the record. To this court, it is clear on the record that appellant did not mislead the

court or respondent. We quote Mr. Katz, respondent's attorney, and the court's response: "I am just suggesting this Court doesn't have jurisdiction based upon the proceedings that have been instituted in this case number to hear those questions because case number 244076 was a lawsuit to collect amounts due on a promissory note. It's not a lawsuit to set aside a fraudulent conveyance. [¶] There have been no amendments of pleadings in that regard. The issues are not presented to the Court. [¶] THE COURT: Well, I won't make that decision at this time, but I will hear the evidence on the fraudulent aspect and submit it, and then if you gentlemen have some law, or if there is some law in here that I haven't seen, then I will consider that."

In this record, which we have carefully examined, we find no reason to warrant the conclusion that appellant is estopped to challenge the trial court's power to act.

Indeed, our holding is that in purporting to find that "(2) The note and deed of trust of PAL Investments, Inc. constitutes a fraudulent conveyance as to plaintiff and, as such, are void," the court exceeded its jurisdiction. We refer, of course, to the broader meaning of "jurisdiction." (See *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288-291 [109 P.2d 942, 132 A.L.R. 715]. If in these proceedings, appellant had somehow been able to anticipate the court's order and sought to restrain the court, the writ would have been granted. While it is arguable that the court had jurisdiction over the subject matter and the parties in the fundamental sense, it is our view that the court had no " 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." (*Abelleira, supra,* at p. 288.) Statutory provisions, Civil Code section 3439 et seq. (Uniform Fraudulent Conveyance Act) authorize a prescribed procedure for setting aside a fraudulent conveyance. Obviously contemplated is an action in equity requiring pleadings and notice to the parties which would, for example, certainly include Mrs. O'Halleran. This procedure respondent elected not to undertake with the result that there could be no cognizable issue of a fraudulent conveyance in the proceedings he did institute by his petition. Clearly the trial court exceeded its jurisdiction in purportedly deciding the issue.

Respondent brings to our attention the case of *Schoenfeld* v. *Norberg* (1970) 11 Cal.App.3d 755 [90 Cal.Rptr. 47], wherein the appellate court held in a Civil Code section 1245 et seq. proceeding that "where the issue is whether property held by husband and wife is joint tenancy or

community, the trial court may make that determination and specify in the order the interest being sold." (At p. 761.) This result was reached to obviate a self-contradictory order of the trial court. However, *Schoenfeld* is not inapposite.

The *Schoenfeld* court specifically recognized the rule in *Blue* and *Strangman* that we apply herein, but found it to be inapplicable because there was "no issue of a fraudulent conveyance; . . ." (At p. 761.) In the case at bench a purported fraudulent conveyance was made an issue although in a manner contrary to the law. The rule in *Blue's* case is still the applicable law and requires that the order directing an execution sale be vacated. Any other result would create "due process" problems, not to ignore the aforementioned result of rendering the Fraudulent Conveyances Act meaningless.

Concluding as we have that the trial court exceeded its "jurisdiction" in voiding PAL's 1973 $20,000 note and deed of trust as a fraudulent conveyance, it remains as a lien or encumbrance on the homestead property. (See Civ. Code, § 1251 et seq.) ■ Even though the 1973 trust deed was not recorded before respondent levied upon the property, recordation is not essential to the validity of a mortgage, but only affects its priority as against subsequent bona fide purchasers. (*Boye* v. *Boerner* (1940) 38 Cal.App.2d 567 [101 P.2d 757]; 3 Witkin, Summary of Cal. Law (8th ed. 1973) Security Transactions in Real Property, § 26, pp. 1514-1515.) An unrecorded mortgage prior in time takes precedence over an attachment or judgment lien for the judgment creditor is not a bona fide purchaser for value within the meaning of Civil Code section 1214. (*Livingston* v. *Rice* (1955) 131 Cal.App.2d 1, 3 [280 P.2d 52]; 3 Witkin, Summary of Cal. Law, *supra*, at § 31, p. 1517.)

■ To establish a lien on homesteaded property, a levy of execution is the necessary first step in order to subject the excess, nonexempt value of the property to payment of a judgment. (Civ. Code, § 1245.) The levy of execution then establishes a lien on the possible excess value of the property to the extent the excess may eventually be determined to exist. (*Lean* v. *Givens* (1905) 146 Cal. 739 [81 P. 128].)

Thus, at the time the 1973 deed of trust was given on the property, the respondent had no lien on the property. (*Lean* v. *Givens, supra,* 146 Cal. 739, 742.)

The appraisers did not place a value on the PAL encumbrances; however, from the record evidence we are able to ascertain that when *all*, including appellant's, liens and encumbrances are added to the statutory homestead exemption, their total value exceeds the appraised value of the O'Halleran homestead property. When viewed in this light, the trial court's order ordering an execution sale is in error (Civ. Code, § 1254) and for that reason is hereby ordered vacated.

Scott, J., and Halvonik, J., concurred.