In re Morton REED, Debtor.

Steven A. SCHWABER,
Trustee, Plaintiff,

v.

Morton REED; Safi Reed; Joseph T.
Vodnoy; Lynne R. Vodnoy; Home Sav-
ings of America, F.A., a corp. and Does
1 thru 50, inclusive, Defendants.

Bankruptcy No. LA 86–17049–VZ.
Adv. No. LA 88–00517–VZ.

United States Bankruptcy Court,
C.D. California.

July 6, 1988.

Stanley E. Goldich, Pachulski, Stang & Ziehl, Los Angeles, Cal., for Chapter 7 Trustee.

Gary E. Klausner, Robinson, Diamant, Bril & Klausner, Los Angeles, Cal., for Home Savings & Loan.

Earl Hagen, Encino, Cal., for Safi Reed, Wife of debtor.

Steven Schwaber, Trustee Kadenacy, Mendelson & Schwaber, Los Angeles, Cal., for Chapter 7 Trustee.

Richard M. Moneymaker, Moneymaker & Kelley, Los Angeles, Cal., for debtor.

## MEMORANDUM OF DECISION

VINCENT P. ZURZOLO, Bankruptcy Judge.

## I. INTRODUCTION

Steven A. Schwaber, the trustee in this Chapter 7 Bankruptcy Case ("Trustee"), filed a motion requesting a preliminary injunction compelling the turnover of proceeds from the sale of residential property located at 225 South Rodeo Drive, Beverly Hills, California 90212 ("the Property") as well as other injunctive relief. The relief is sought against Morton Reed, the debtor in this Chapter 7 case ("Debtor"), Safi Reed, his wife ("Debtor's Wife"), and Moneymaker & Kelley, the bankruptcy counsel for Debtor ("M & K").

## II. FACTS

None of the pertinent facts are in dispute. Debtor voluntarily commenced this case on September 12, 1986. Debtor filed a schedules of assets that includes a "½ joint tenancy interest with wife in [the "Property"]." Also in his Schedules, Debtor swears that the value of his joint tenancy interest in the Property was $300,000, estimates that the amount of secured debt encumbering the Property was $380,000 and claims a $45,000 homestead exemption Property pursuant to California Code of Civil Procedure ("CCP") Section 704.710 *et seq.*

Trustee filed a report with this Court on August 7, 1987, which is commonly known as a "No Asset Report." This report is a pre-printed form filed by Chapter 7 trustees after examining debtors, investigating assets and liabilities and having determined, at least preliminarily, that there are no assets worth liquidating for the benefit of creditors. On this pre-printed form, the Trustee merely types the name of the case and its number and then signs, dates, and files it with the Court.

Printed at the bottom of this form is a proposed order approving the No Asset Report of the Chapter 7 Trustee, and, most pertinent to this decision, closing the bankruptcy case. Above the signature line of this proposed order is printed the name of Jack L. Wagner, Clerk for the United States Bankruptcy Court of the Central District of California. Judges of this Court have authorized Clerk Wagner to sign and enter orders closing cases pursuant to administrative order of this Court.

The proposed Order approving the No Asset Report filed by Trustee in Debtor's case has never been signed, dated, or entered by Clerk Wagner.

One of Debtor's creditors, Robert Humiston ("Humiston"), obtained a judgment against Debtor in state court and recorded a judgment lien against the Property. Both the judgment and the lien were obtained after the commencement of Debtor's bankruptcy case. As a result, Debtor sought an *ex parte* order from this Court declaring Humiston's judgment and lien void as they were obtained allegedly in violation of 11 U.S.C. Section 362(a).

After the filing of the No Asset Report, and before November 6, 1987, Debtor's counsel and Trustee appeared at hearings on Debtor's request for an order declaring void Humiston's judgment and lien. Trustee appeared at these hearings because he had learned from Humiston's counsel of Debtor's efforts to sell the Property. At these hearings, Trustee stated that he intended to withdraw his No Asset Report and administer the Property for the benefit of creditors. At the second of these hearings, then presiding Bankruptcy Judge Geraldine Mund admonished Debtor not to sell the Property.

Despite Trustee's stated intention to administer the Property and Judge Mund's warning, on November 6, 1987, Debtor and Debtor's Wife executed a grant deed transferring the Property to Joseph and Lynne Vodnoy (the "Vodnoys"). The Vodnoys paid $1,000,573.15 for the Property.

After retiring the secured debts encumbering the Property, paying the costs of sale and paying $19,355.25 to M & K for attorneys fees and costs incurred in representing Debtor, Debtor and Debtor's Wife received $501,240.92 in net proceeds from the sale of the Property. To be specific, Debtor's Wife received the entire net proceeds from the sale of the Property pursuant to an Escrow Instruction executed by Debtor and Debtor's Wife.

Trustee first learned of the sale of the Property in February of 1988. Trustee filed the complaint commencing the underlying adversary proceeding on April 1, 1988

(The "Complaint"). In the Complaint, Trustee seeks, *inter alia,* turnover of the proceeds of the sale from Debtor, Debtor's Wife and M & K as property of the estate and an accounting of those proceeds. Trustee properly and timely served all defendants named in the Complaint except for Debtor's Wife. Trustee subsequently obtained an alias summons and served the Complaint and summons on Debtor's Wife.

On or about May 18, 1988, Trustee learned of the amount of proceeds received by Debtor and Debtor's Wife from the sale of the Property. Trustee immediately sought an application for an *ex parte* temporary restraining order, which was granted. The temporary restraining order ("TRO") directed the Debtor, Debtor's Wife and M & K not to transfer the proceeds of the sale of the Property and to refrain from destroying or hiding any document related to the sale or its proceeds.

The Court then held two hearings on the Order to Show Cause re Preliminary Injunction (the "OSC") obtained by Trustee. From the briefs, declarations and oral argument submitted for the Court's consideration, the following issues have arisen:

## III. ISSUES

1. Does the Court have personal jurisdiction over Debtor's Wife sufficient to issue a binding injunction?

2. Was the Property deemed abandoned by Trustee pursuant to 11 U.S.C. Section 554(c)?

3. Was the Property held by Debtor and Debtor's Wife as joint tenancy property or as community property?

4. How much of the proceeds from the sale of the Property is property of the estate?

## IV. DISCUSSION

A. *Jurisdiction*

Debtor and Debtor's Wife argue that this Court lacks personal jurisdiction over Debtor's Wife for the purpose of issuing a preliminary injunction because Debtor's Wife claims she was not served with the Com-

plaint at the time of the issuance of the TRO, even though Debtor's Wife was served personally with the OSC and the TRO.

 This position is contrary to the express language of Federal Rule of Civil Procedure 65 which is incorporated by reference in Bankruptcy Rule 7065. Subsection (d) of Rule 65 provides in pertinent part that:

> "Every order granting an injunction in every restraining order.... is binding.... upon the parties to the action, their officers, agent, servants, employees, and attorneys and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

Debtor's Wife actively participated in the sale of the Property. In fact, Debtor's Wife received over $16,000 as a commission for acting as a real estate agent with regard to the sale of the Property. Further, Debtor's Wife received the entire net proceeds from the sale of the Property. There is no doubt Debtor's Wife actively participated in the sale of the Property with Debtor and that she received actual notice of the TRO and the OSC by personal service. Therefore, this Court has personal jurisdiction over Debtor's Wife for the purpose of issuing a preliminary injunction. *See also* 11 Wright & Miller, *Federal Practice and Procedure,* Section 2956 (1973).

### B. *Deemed Abandonment*

The principal argument of Debtor and Debtor's Wife in opposition to the preliminary injunction sought by Trustee is that the Property was abandoned to Debtor by Trustee pursuant to 11 U.S.C. Section 554. Debtor and Debtor's Wife base their argument upon Trustee's filing of the No Asset Report on August 7, 1987.

There are three ways property can be abandoned under 11 U.S.C. Section 554. First, a bankruptcy trustee may obtain a court order authorizing abandonment of the property, but only after notice and hearing. 11 U.S.C. Section 554(a). Second, a party in interest may seek a court order directing the trustee to abandon the property, but again, only after notice and hearing. 11 U.S.C. 554(b). Third, once the bankruptcy case is *closed,* all scheduled, unadministered, and non-exempt property of the estate is deemed abandoned. 11 U.S.C. Section 554(c).

There is no serious contention that the Trustee or a party in interest obtained an order of this Court abandoning the Property under subsections (a) or (b) of Section 554. It is impossible for Debtor to argue this as no motion was ever brought before this Court for such relief. Thus, the main thrust of Debtor's and Debtor's Wife's argument is that the filing of the No Asset Report by Trustee "closed" Debtor's Chapter 7 case and effected a deemed abandonment of the Property under subsection (c) of 11 U.S.C. Section 554.

The only authority on point that Debtor and Debtor's Wife could muster to support this argument is the decision in *Matter of Hunter,* 76 B.R. 117 (Bkrtcy.S.D.Ohio 1987). In *Hunter,* a Chapter 7 trustee filed a no asset report *and* executed a separate notice of abandonment pertaining to an automobile belonging to the debtor in that case. The *Hunter* trustee subsequently filed a motion to reopen the bankruptcy case and "reopen" his no asset report in order to pursue an alleged preference in connection with the security interest in the car.

In its decision, the *Hunter* court expressly recognizes that the bankruptcy case was never closed. *Hunter,* 76 B.R. at 118. Nevertheless, the *Hunter* court holds that the filing of a final no asset report is "a determination upon which the Court and parties in the case may rely" and therefore constitutes a deemed abandonment under 11 U.S.C. Section 554(c). *Id.* at 119–120. As a result, the *Hunter* court denied the trustee's motion to reopen the case because it had never been closed and denied the Trustee's motion to "reopen" his final report, apparently because it would "result in unnecessarily burdening the prompt administration of the case, be contrary to the concept of finality in legal proceedings and be beyond the recognized exceptions to the

general rule that a trustee's abandonment is irrevocable...." *Id.* at 119.

I find the *Hunter* decision inapt and unpersuasive. It is inapplicable because Trustee never expressly abandoned the Property as the *Hunter* trustee specifically abandoned the automobile in question by a notice of abandonment. The decision is not persuasive because it ignores the express language of 11 U.S.C. Sections 554(c) and 350 and Bankruptcy Rule 3022.

■ 11 U.S.C. Section 554(c) provides that a deemed abandonment occurs "at the time of the *closing* of a case." 11 U.S.C. Section 350 provides that "After an estate is fully administered and the court has discharged the trustee, the *court* shall close the case." Bankruptcy Rule 3022 provides in pertinent in part that "after an estate is fully administered,.... the Court shall enter a *final decree* .... closing the case." (my emphasis throughout)

The language of these statutes and rule clearly provides that deemed abandonment under Section 554(c) does not occur until the case is closed and the case is not closed until an order closing the case is entered. The proposed order closing the case was never signed, dated or entered. Therefore, the Property was never deemed abandoned and the proceeds from the sale of the Property are property of the estate. 11 U.S.C. Section 541(a)(6).

My resolution of this issue does not rest solely upon a strict construction of statutory language. The *Hunter* court largely based its decision on the policy that the parties in a bankruptcy case require finality with regard to abandonment issues. I agree. True finality, however, is achieved only when a court order is entered, not when a trustee's report is filed.

Even if the Property had been abandoned, that abandonment may be undone if information concerning the Property was not properly disclosed so that Trustee could make an informed decision regarding its disposition. *Hunter*, 76 B.R. at 118 and cases cited therein. Debtor swore in his Schedules that his interest in the Property was worth $300,000. Debtor and Debtor's Wife sold the Property for more than $1,000,000. This difference in value should have been disclosed to Trustee.

The appropriate remedy for Debtor was to seek an order directing Trustee to abandon the Property after notice and hearing, pursuant to 11 U.S.C. Section 554(b). Debtor was familiar with this remedy as he sought it twice in this case with regard to other assets. Instead, Debtor lurked in the shadows with the hope of reaping a windfall from Trustee's lack of knowledge concerning a valuable asset that could be administered for the benefit of creditors.

## C. *Community Property or Joint Tenancy Property*

Trustee argues that the Property is community property of Debtor and Debtor's Wife rather than joint tenancy property. The distinction is significant because 11 U.S.C. Section 541(a)(2) provides that "all interests of the debtor and the debtor's spouse in community property as of the commencement of the case...." constitutes property of the estate. Trustee asserts that the Property is community property despite the fact that Debtor and Debtor's Wife took title to the Property in 1979 as joint tenants.

Trustee bases his argument entirely upon California Civil Code ("CC") Section 4800.1 which provides in pertinent part:

"(b) For the purpose of division of property *upon dissolution of marriage or legal separation*, property acquired by the parties during marriage in joint form, including.... joint tenancy,.... is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following:

(1) a clear statement in the deed or other documentary evidence of title of which the parties acquired that the property is separate property and not community property, or

(2) proof that the parties had made a written agreement that the property is separate property." (my emphasis.)

Neither Debtor nor Debtor's Wife submitted evidence sufficient to rebut the pre-

sumption set forth in CC Section 4800.1. Trustee therefore asserts that the Property presumptively is community property and that the entire proceeds of the sale of the Property is property of the bankruptcy estate.

■ Trustee is correct in applying California state law in determining whether the Property is property of the estate. *Hannah v. Swift,* 61 F2d 307 (9th Cir.1932); *In re Jacobs,* 48 B.R. 570, 573 (Bkrtcy.S.D.Cal. 1985). Trustee, however, applies the wrong provision of California law.

CC Section 4800.1 is, by its own terms, applicable only in division-of-property disputes that occur upon dissolution of marriage or legal separation. Neither type of dispute is before me. The pertinent provision of California law is CC Section 5110, which provides in pertinent part:

> ".... all real property situated in this state and all personal property wherever situated acquired during the marriage by a married person while domiciled in this state is community property; .... except, that when any of the property is acquired by husband and wife by an instrument in which described as they are husband and wife, *unless a different intention is expressed in the instrument,* the presumption is that the property is the community property of the husband and wife." (my emphasis.)

The deed by which Debtor and Debtor's Wife acquired the Property expresses the intent that Debtor and Debtor's Wife took title as husband and wife and as joint tenants. Therefore the Property and the proceeds from its sale are not community property. As a result, only Debtor's fifty percent (50%) joint tenancy interest in the proceeds from the sale of the Property is property of the estate subject to Trustee's requested injunction for turnover. *Cf., Hansford v. Lassar,* 53 Cal.App.3d 364, 371, 125 Cal.Rptr. 804 (1975); (third party creditors are not entitled to presumption of community property set forth in predecessor statute to CC Section 4800(1)).

Trustee contends that he should not be treated as a third party creditor, but rather as Debtor's successor in interest pursuant to 11 U.S.C. Section 541(c)(1). As a result, Trustee argues that he succeeds to Debtor's rights as a spouse and therefore can assert the presumption set forth in CC Section 4800.1.

This argument fails, first, because a trustee in a Chapter 7 bankruptcy case succeeds to a debtor's interest in property only as a fiduciary to the debtor's creditors. Therefore, a Chapter 7 trustee is more like a creditor than a spouse. Second, even if Trustee were to "step into" Debtor's marriage, there is no contested dissolution of marriage or legal separation, one of which must be present for the presumption of CC Section 4800.1 to apply.

Finally, Trustee argues that the California legislature has established a system of determining community property rights that discriminates against creditors in a bankruptcy case. Therefore, the system is a violation of the Supremacy Clause of the United States Constitution. This argument is not only wrong, it is farfetched. The California legislature has not established two different systems of determining property rights. Rather, it has enacted CC Section 4800.1 to avoid difficult evidentiary problems which often arise in property disputes *between spouses.* The presumption thereby established does not create a constitutionally invalid obstacle for bankruptcy trustees.

Trustee was and is free to submit evidence that Debtor and Debtor's Wife held the Property as community property and not as joint tenants, just as Debtor's Wife submitted evidence to support her contention that the Property is not community property. Trustee submitted no evidence on this issue and instead relied upon a presumption that is not available to him.

## V. THE ESTATE'S SHARE OF THE PROCEEDS

### A. *Liens and costs of sale.*

Debtor and Debtor's Wife argue that even if Trustee is entitled to some share of the proceeds from the sale of the Property, that share is Debtor's fifty percent (50%) joint tenancy interest less the full amount

of secured debt encumbering the Property, all the costs of sale, and the entire $45,000 homestead exemption claim. If Debtor and Debtor's Wife are correct, Trustee is left with little or no proceeds.

This argument is based on a series of decisions rendered by bankruptcy courts and one district court construing California law *In re Schneider*, 9 B.R. 488 (N.D.Cal. 1981), *In re Miles*, 35 B.R. 52 (Bkrtcy.E.D. Cal.1983), *In re Jacobs*, 48 B.R. 570 (Bkrtcy.S.D.Cal.1985). In each of these decisions, a creditor or the bankruptcy trustee sought a determination of the amount of equity that would belong to the bankruptcy estate if the debtor/spouse's joint tenancy interest in residential real property were sold. Each of these courts looked to California law for an answer and found it in the decision of *Schoenfeld v. Norberg* 11 Cal.App.3d 755, 90 Cal.Rtpr. 47 (1970).

The *Schoenfeld* court held that in evaluating a proposed execution sale by a judgment creditor of a judgment debtor/spouse's joint tenancy interest in real property, that the amount of encumbrances on the entire property must be deducted from the fractional interest held by the judgment debtor/spouse. *Schoenfeld*, 11 Cal.App.3d at 766, 90 Cal.Rptr. 47. Although the above-cited decisions rely upon *Schoenfeld*, there is little or no discussion of the rationale employed by the *Schoenfeld* court and its applicability in bankruptcy.

The *Schoenfeld* decision makes sense under California execution sales law because a California judgement creditor cannot sell the joint tenancy interest of the non-judgment debtor/spouse. CCP Section 704.-820(a). The apparent public policy behind this law is to protect the non-debtor spouse from an involuntary sale of his or her homestead. As a result, if the execution sale of the judgment debtor/spouse's interest will not satisfy all of the encumbrances on the entire property, the execution sale will not be authorized. *Schoenfeld*, 11 Cal.

App.3d at 765–766, 90 Cal.Rptr. 47; CCP Section 704.800.

■ The *Schoenfeld* rationale, as adopted by the decisions cited above, is not applicable in this case. Debtor and Debtor's Wife's *voluntarily* sold the Property. In doing so, they *voluntarily* paid all secured debts encumbering the Property and all costs of sale from the gross proceeds of the Property, before making any division according to their respective joint tenancy interests. Thus, the public policy of protecting non-judgment debtor/spouse from the potentially harsh results of an involuntary execution sale carries no weight in this case.[1]

I therefore conclude that the amount of secured debt encumbering the Property and the costs of sale should be deducted from the gross proceeds of the sale and not from the bankruptcy estate's fifty percent (50%) interest in the gross proceeds.

### B. *Homestead Exemption*

■ The remaining issue is whether the $45,000 homestead exemption claim of the Debtor should be deducted from the gross proceeds of sale or only from the bankruptcy estate's share of the gross proceeds.

As discussed above, the interest that comes into the bankruptcy estate is Debtor's fifty percent (50%) joint tenancy interest in the Property. The Court has not found, nor has Trustee cited, any authority which restricts a debtor/spouse from asserting the full amount of a homestead exemption against his or her fractional joint tenancy interest in a homestead. Accordingly, I conclude that Debtor may deduct the entire $45,000 homestead exemption from the fifty percent (50%) joint tenancy interest in the net proceeds from the sale of the Property that is property of the bankruptcy estate. *See, Schneider*, 9 B.R. at 488.

---

1. I also find the *Schoenfeld* rationale unconvincing even in the context of an involuntary sale by a bankruptcy trustee. This is because a bankruptcy trustee is empowered to sell the interest

of the non-debtor/spouse pursuant to 11 U.S.C. Section 363(h), a result not possible under California execution sales law.

## VI. CONCLUSION

Based upon the foregoing, I direct Debtor and Debtor's Wife to turnover one-half of the net proceeds from the sale of Property, less $45,000 representing Debtor's homestead exemption claim. Trustee shall prepare and submit a proposed form of injunction in accordance with this memorandum of decision and the Findings of Facts and Conclusions of Law re Preliminary Injunction previously entered.