[Civ. No. 33623. First Dist., Div. Four. July 19, 1974.]

CLEMENT F. VANONI et al., Plaintiffs and Appellants, v.
COUNTY OF SONOMA et al., Defendants and Respondents.

## COUNSEL

Brobeck, Phleger & Harrison, Gregory A. Harrison, Bailey Lang and Eric W. Jorgensen for Plaintiffs and Appellants.

James P. Botz, County Counsel, and Thomas B. Sawyer, Deputy County Counsel, for Defendants and Respondents.

## OPINION

CALDECOTT, P. J.—Appellants (taxpayers of the County of Sonoma) commenced this action against the County of Sonoma, the Sonoma County Flood Control and Water Conservation District (hereinafter the district), and the members of the Board of Supervisors of Sonoma County and the board of directors of the district. The complaint alleged that in 1964, the district had entered into a contract with the United States obligating the county and the district for debts in excess of the county's annual revenue and income without the consent of two-thirds of the electors as required by California Constitution, article XIII, section 40. Appellants prayed for declaratory relief and for an injunction prohibiting further action under the contract until approved by the electors. A demurrer was sustained without leave to amend; judgment in favor of the defendants was entered.

The facts of this case are undisputed. In 1949, the California Legislature created the district (Stats. 1949, ch. 994, pp. 1793-1810; Deering's Wat. Code, Act 7757) at the recommendation of the United States to form a political entity capable of satisfactorily dealing with the United States concerning flood control and water conservation on the Russian River drainage within Sonoma County. (West's Wat. Code, App., § 53-35 [Deering's Wat. Code, Act 7757, § 35].) The Legislature declared that the cost of adequate flood control and water conservation was beyond the means of the property owners and taxpayers of the district and that financial aid from the United States was necessary. (*Ibid.*) One of the powers granted the district was the power to make and enter contracts with the United States for the construction, maintenance, and operation of district water projects. (West's Wat. Code, App., § 53-3 [Deering's Wat. Code, Act 7757, § 3].)

The boundaries of the district are coterminous with those of Sonoma County (West's Wat. Code, App., § 53-1 [Deering's Wat. Code, Act 7757, § 1]); taxes levied by the district upon taxable property within the district

are to be levied and collected at the same time and in the same manner as taxes for county purposes. (West's Wat. Code, App., §§ 53-12, 53-12.2 [Deering's Wat. Code, Act 7757, §§ 12, 12.2].) The Sonoma County Board of Supervisors are designated as ex officio the governing board of the district (West's Wat. Code, App., § 53-4 [Deering's Wat. Code, Act 7757, § 4]); several lower echelon county officials and employees are to be officials of the district unless otherwise provided by the district's governing board. (West's Wat. Code, App., § 53-6 [Deering's Wat. Code, Act 7757, § 6].)

The federal Flood Control Act of 1962 (Pub. L. 87-874) authorized the construction of the Warm Springs Dam and Lake Sonoma on Dry Creek in the Russian River Basin of Sonoma County. On December 7, 1964, the district entered into a contract with the United States[1] for water storage space in Lake Sonoma. The district agreed to pay, within 50 years after water supply is initiated in the completed dam, the investments for water storage space, and also agreed to make other payments for certain costs of operation and maintenance of the project. Appellants claim that the total amount of these payments will exceed $40 million, an amount "in excess of Sonoma County's revenue and income in the year of execution, and is in excess of the County's revenue and income in any year that payments may begin and in any year that payments will be made." The contract was entered into without assent of the electors of Sonoma County.

## I

Citing *Martin v. City of Corning* (1972) 25 Cal.App.3d 165 [101 Cal. Rptr. 678], respondents contend that the United States is an indispensable party to this action because the United States has interests in the contract which will be affected by any relief sought by appellants. This contention, although not raised in the court below, may be raised for the first time on appeal. (*Martin v. City of Corning, supra,* 25 Cal.App.3d at p. 170.) If the United States is regarded as an indispensable party, the action should be dismissed, but without prejudice. (Code Civ. Proc., § 389, subd. (b).)

■ Section 389 of the Code of Civil Procedure requires joinder of persons materially interested in an action whenever feasible. (See Law Revision Com. comment to § 389.) Parties to a contract should usually be joined in an action challenging the validity of the contract. In *Martin,* the court

---

[1]The Water Supply Act of 1958 (Pub. L. 85-500), as amended by section 10 of Public Law 87-88, authorizes the United States to make contracts with state and local interests for water supply storage in any Corps of Engineers reservoir.

determined that a contractor who had constructed curbs and gutters pursuant to a contract with the city was an indispensable party to a taxpayer suit seeking a declaration that the contract was void. The failure to join the contractor rendered the subsequent judgment void. Accordingly, the judgment was reversed, but the court discussed the merits of the taxpayers' contention for the benefit of the trial court upon remand. (See also *Irwin v. City of Manhattan Beach* (1964) 227 Cal.App.2d 634, 636 [38 Cal.Rptr. 875]; *Irwin v. City of Manhattan Beach* (1966) 65 Cal.2d 13, 18 [51 Cal.Rptr. 881, 415 P.2d 769].) However, joinder of the United States is not feasible in this case because the United States would not be subject to the jurisdiction of the state courts. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 81-82, pp. 1756-1758.)

When joinder is not feasible, section 389, subdivision (b) directs the court to "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder." The term "indispensable" is used only in a conclusory sense, a person is "regarded as indispensable" when he cannot be made a party and, upon a consideration of relevant factors, it is determined that in his absence it would be preferable to dismiss the action. (Advisory committee's note to § 389.)

No direct authority has been found on the question of whether, under the circumstances of this case, the United States should be regarded as an indispensable party. The most important factor distinguishing this case from *Martin* is that appellants here would be left with no remedy in the state courts if their action were dismissed for nonjoinder of the United States. Because section 389 of the Code of Civil Procedure directs that one factor to be considered by the court is whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder, "equity and good conscience" suggest that the action should proceed.

## II

Appellants purport to appeal from the order entered on April 25, 1973, sustaining the demurrer without leave to amend, but since such an order

is nonappealable (*Beazell* v. *Schrader* (1962) 205 Cal.App.2d 673, 674 [23 Cal.Rptr. 189]), this appeal will be considered as an appeal from the judgment entered on May 3, 1973.

## III

Without citing any case authority, respondents urge preliminarily that appellants' action is premature because "appellants as taxpayers have not been damaged and cannot be until the dam becomes operational." ■ It is true that until certain conditions are fulfilled no payments will be made by the district. However, the district has already obligated itself by contract to begin making payments once those conditions are met. To require appellants to postpone their challenge until the multi-million dollar dam has been completed and the district has begun making payments to the United States would be highly impractical. ■ Furthermore, respondents may not raise this claim of prematurity for the first time on appeal; the defense that an action is premature must be seasonably urged in the trial court or it is waived. (*Kelley* v. *Upshaw* (1952) 39 Cal.2d 179, 186 [246 P.2d 23]; *Schoenfeld* v. *Norberg* (1970) 11 Cal.App.3d 755, 759 [90 Cal.Rptr. 47].)

## IV

Appellants contend that "the Contract between the Agency and the United States is invalid and void in that it imposes indebtedness on the County of Sonoma in excess of its annual income and revenue without the consent of two-thirds of the electors expressed in an election held for that purpose, as required by . . . Article XIII, Section 40" of the California Constitution. Article XIII, section 40 provides that: "No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose . . . ." The issue presented is whether the district is subject to this constitutional debt limitation. Both parties agree that the list of local entities set forth in the debt limitation provision of the Constitution is exclusive. (See *Eastern Mun. Water Dist.* v. *Scott* (1969) 1 Cal.App.3d 129, 132-133 [81 Cal.Rptr. 510].) ■ As a flood control and water conservation district is not named in the section, the district, as such, is not included within the limitation imposed by article XIII, section 40.

Appellants note, however, that the district was created with the same boundaries, individuals on its governing board, citizens, taxable property, and lower echelon administrative officials as Sonoma County and is per-

forming traditional flood control and water conservation functions of the county. Appellants assert that because of these similarities, the act establishing the district could not constitutionally empower the district to exercise the functions of the county free of the constitutional debt limitation on county indebtedness. In effect, the appellants claim the district and the county are one and the same.

The Sonoma County Flood Control and Water Conservation District is a legal entity separate from the county and created by act of the Legislature as a body corporate and politic. The act authorized the district to enter into contracts with the United States government for the construction, maintenance, and operation of district water projects. The act provided for certain debt limitations but specifically exempted from these limitations contracts with the United States. The validity of the act was adjudicated and upheld in *Robbins* v. *Sonoma County Flood etc. Dist.* (1956) 138 Cal.App.2d 291 [292 P.2d 52] (hg. den. by Supreme Ct.). In *Robbins,* at pages 301-302, the appellant contended "[t]hat the district is not a proper entity, having been created by an act in violation of the Constitution of the State of California." The court answered by stating "[w]e do not believe this claim of illegality needs extended treatment. Flood control and water conservation districts have been created by special act on numerous occasions and the legality of such creation has been upheld." (*Supra,* at p. 302.)

In addition, the court, when confronted with a related contention in *Riverside etc. Dist.* v. *Jos. W. Wolfskill Co.* (1957) 147 Cal.App.2d 714, 717-718 [306 P.2d 22], concluded that for the purpose of section 394 of the Code of Civil Procedure (authorizing change of venue in actions brought by a county against nonresidents) the Riverside Water District was not "in essence and nature a county." This conclusion was reached even though the district exercised functions which historically have been county functions and the county board of supervisors were ex-officio the district's governing body.[2] As appellants point out, *Riverside* was limited to the question of the applicability of the statutory venue provision, but a similar conclusion would appear proper in the present case.

---

[2]The court in *Riverside* observed that "the real burden of appellant's argument is that the reasons for granting a change of venue of an action in which a county is plaintiff are equally cogent reasons for granting a change of venue of an action in which such a district is plaintiff. This is a legislative and not a judicial problem." (*Ibid.,* p. 718.) A subsequent legislative amendment to section 394 added "local agency within a certain county" to the entities enumerated and the Riverside Water District was found to be a local agency within the meaning of the venue statute. (*Garrett* v. *Superior Court* (1974) 11 Cal.3d 245, 247 [113 Cal.Rptr. 152, 520 P.2d 968].)

■ Clearly, the fact that in this case the Sonoma Water District is performing functions traditionally performed by counties is not by itself sufficient to make the district subject to the constitutional debt limitation on counties. (See *Eastern Mun. Water Dist.* v. *Scott, supra,* 1 Cal.App.3d at p. 133.) Appellants have cited no cases which support their position that the additional similarities they have identified bring the district contract within the debt limitation.

Appellants have cited several cases from California and other jurisdictions which have found a debt or tax limitation applicable to an entity not nominally within the limitation. However, the result in each of those cases appears to be controlled by one of two circumstances not present here: (1) the entity subject to the limitation ultimately assumed the debt obligation, or (2) the entity subject to the limitation controlled the decision to incur the debt or levy the tax.

Appellants rely heavily on *City of Saratoga* v. *Huff* (1972) 24 Cal.App.3d 978 [101 Cal.Rptr. 32, 102 Cal.Rptr. 376], to support their position. *Saratoga,* however, is distinguishable. As the court stated in that case, the Legislature cannot authorize a public entity to incur a general indebtedness in violation of article XIII, section 40 of the Constitution. The college district, which the court found to be liable for the debt, was included within the debt restriction imposed by the Constitution. In the present case, as stated above, the district was not included in the constitutional debt restriction.

Appellants also cite several cases from other jurisdictions to support their contention that the debt limitation should apply. *Lowery* v. *County of Jefferson* (Ky. 1970) 458 S.W.2d 168, holds that a taxing limitation on counties applied to a county community improvement district, however, the ultimate power to decide whether a tax was to be levied was held by the county through the county fiscal court. Similarly, in *Rappaport* v. *Department of Public Health, etc.* (1949) 227 Ind. 508 [87 N.E.2d 77], the debt of a separate district was held to be the debt of the city for the purpose of a provision limiting city debts because although a new entity had been created, the actual control remained with the city.

Although the Sonoma Water District may be performing functions traditionally performed by counties, appellants have offered no evidence, beyond the fact that the same individuals sit on the governing boards of both the county and the water district, that Sonoma County exercises actual control over the actions of the district. The fact that the same individuals are

members of both boards is not sufficient to establish that control. (Cf. *Riverside etc. Dist.* v. *Jos. W. Wolfskill Co., supra,* 147 Cal.App.2d 714, 717-718.) Because Sonoma County neither assumed any obligation for the district's contractual obligation to the United States nor controlled the district's decision to incur that obligation, the constitutional limitation on county indebtedness does not apply to the indebtedness of the district.

The judgment is affirmed.

Christian, J., and Bray, J.,* concurred.


Appellants' petition for a hearing by the Supreme Court was denied September 12, 1974.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.