[No. C023548. Third Dist. May 6, 1997.]

COUNTY OF SAN JOAQUIN et al., Plaintiffs and Appellants, v.
STATE WATER RESOURCES CONTROL BOARD et al., Defendants
and Respondents;
UNITED STATES OF AMERICA, etc., et al., Real Parties in Interest and
Respondents;
WESTLANDS WATER DISTRICT et al., Interveners and Respondents.

COUNSEL

Thomas M. Zuckerman, Neumiller & Beardslee, Jeanne M. Zolezzi, Steven A. Herum, Karna E. Harrigfeld, Brewer, Patridge, Gerlomes & Herrick, John Herrick, Roberts & Roberts, Reid Roberts, Nomellini, Grilli & McDaniel, Dante John Nomellini and Daniel A. McDaniel for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Charles W. Getz IV, Assistant Attorney General, Clifford T. Lee and Linus Masouredis, Deputy Attorneys General, and Barbara Leidigh for Defendants and Respondents.

Maria A. Iiuzuka, Susan N. Weber, David B. Anderson, David A. Sandino, Beveridge & Diamond and Daniel J. O'Hanlon for Real Parties in Interest and Respondents.

Kronick, Moskovitz, Tiedemann & Girard, Thomas W. Birmingham, William T. Chisum, Best, Best & Krieger, Eric Garner, James Roberts, Linneman, Burgess, Telles, Van Atta & Vierra, Diane V. Rathmann, Morrison & Foerster and Kevin Haroff for Interveners and Respondents.

OPINION

**NICHOLSON, J.**—In this dispute, established water users challenge restrictions imposed under new federal standards for water quality and wildlife

protection. The trial court found the United States Bureau of Reclamation was an indispensable party and dismissed the action after the bureau refused to waive its sovereign immunity. The plaintiffs appeal on equitable grounds; we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The United States Bureau of Reclamation (Bureau) operates the Central Valley Project, the country's largest water reclamation project. "The Sacramento Valley, containing the Sacramento River, lies in the northern portion of the Central Valley, and the San Joaquin Valley, containing the San Joaquin River, lies in the southern portion. The Sacramento River has a surplus of water because of heavier rainfall in the northern region . . . . The San Joaquin River, in contrast, does not supply sufficient water for the extensive amount of tillable soil in its valley. The [Central Valley Project] transports some of the Sacramento River's surplus water to the San Joaquin Valley and permits the waters of the San Joaquin River to be diverted for irrigation and other purposes to new areas where water is scarce." (*South Delta Water Agency* v. *U.S., Dept. of Int.* (9th Cir. 1985) 767 F.2d 531, 534.) The Bureau operates the Central Valley Project under water rights permits from the California State Water Resources Control Board.

California's Department of Water Resources operates the State Water Project. The principal facilities of this project include the Oroville Dam, the Delta Pumping Plant, and the California Aqueduct. (Wat. Code, § 12930 et seq.) The State Water Project also releases previously stored water to the Delta and rediverts it. The Department of Water Resources, like the Bureau, operates this project under permits from the State Water Resources Control Board.

This action concerns the allocation of water impounded by the Bureau at the New Melones Dam on the Stanislaus River, which is part of the Central Valley Project. (See *California* v. *United States* (1978) 438 U.S. 645, 651 [98 S.Ct. 2985, 2989 57 L.Ed.2d 1018, 1024].) The Bureau uses this water to provide fish and wildlife restoration flows on the San Joaquin River, and control water quality standards.

On June 8, 1995, the State Water Resources Control Board adopted Water Rights Order No. 95-6 (WR 95-6), which approved changes in the water

rights permits for both the State Water Project and the Central Valley Project.[1] On July 7, 1995, the County of San Joaquin, Stockton East Water District, Central San Joaquin Water Conservation District, Central Delta Water Agency, South Delta Water Agency, Reclamation District No. 2072, R.C. Farms, Inc., and Alexander Hildebrand (collectively, appellants), filed a petition for writ of mandate, contending the use of New Melones water for fish and wildlife restoration and water quality violates California water laws and denies the appellants their priority rights. Some appellants hold water supply contracts with the Bureau for New Melones water; other appellants otherwise claim riparian rights on the San Joaquin River or the Sacramento-San Joaquin River Delta. The petition for writ of mandate contained 14 causes of action, all of which challenged WR 95-6 and sought to modify the Bureau's Central Valley Project operations.[2] The petition asserted violations of the California Environmental Quality Act and the California Water Code.

Appellants' petition named as respondents the State Water Resources Control Board and the five individual board members, and named, as real parties in interest, the United States through the Bureau and the State of California through the Resources Agency and the Department of Water Resources. Subsequently, the Kern County Water Agency, the Metropolitan Water District of Southern California, Santa Clara Valley Water District, Westlands Water District, and the State Water Contractors intervened as respondents.

The State Water Resources Control Board moved for judgment on the pleadings arguing the Bureau was an indispensable party, which required dismissal of the action. At the hearing on this motion, the Bureau specially appeared and elected not to waive its sovereign immunity. In a detailed ruling, the trial court found the Bureau was an indispensable party and thus dismissed the action without prejudice.

---

[1]These changes modified the water quality standards for striped bass spawning, the Suisun Marsh, export rates, and operations of the Delta Cross-Channel facilities. The changes also permit the Bureau and the Department of Water Resources to use each other's pumping facilities when one has reached its export limitation in order to improve fish protection. WR 95-6 also modified requirements for operating the New Melones Reservoir with respect to the salinity water quality standard for Vernalis, which is the point at which the San Joaquin River enters the Delta.

[2]Appellants sought (1) to "set aside, vacate, and rescind" WR 95-6; (2) priority of their interests to water stored in and delivered from the Central Valley Project's New Melones Reservoir over others' interests in the water; (3) to limit the export of Central Valley Project water; and (4) to impose additional environmental mitigation requirements on the Central Valley Project.

DISCUSSION

The sole issue presented in this appeal is whether the trial court erred in finding the Bureau was an indispensable party, thereby necessitating dismissal of this action. Contrary to appellants' assertion, we review the trial court's determination pursuant to Code of Civil Procedure section 389, subdivision (b), for an abuse of discretion, and find no basis for reversal.[3]

Section 389 provides: "(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. [¶] (b) If a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder."

Section 389 first sets out, in subdivision (a), a definition of persons who ought to be joined if possible (sometimes referred to as "necessary" parties). Then, subdivision (b) sets forth the factors to follow if such a person cannot be made a party in order to determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as *indispensable*." (Italics added.) The subdivision (b) factors "are not arranged in a hierarchical order, and no factor is determinative or necessarily more important than another." (See 4 Moore's Federal Practice (3d ed. 1997) ¶19.05[1][a].)

---

[3]All further undesignated statutory references are to the Code of Civil Procedure.

Here, no one disputes the United States is a party which should be joined if possible under section 389, subdivision (a). Therefore, the case turns on whether the trial court properly applied the factors set forth in section 389, subdivision (b). The trial court expressly found *all four factors* indicated this action should not proceed without the United States. As the trial court's ruling noted: "It is clear that the Bureau, named as a Real Party in Interest, falls within the purview of paragraph (2) of section 389(a). It is also clear that the Bureau is not amenable to this Court's jurisdiction and has refused to waive its sovereign immunity. This Court must therefore apply the four factors listed in subdivision (b) of section 389 to determine whether, in equity and good conscience, the action should proceed without the Bureau. [¶] The four factors listed in section 389(b) were briefed and argued at length by the parties. The Court finds as follows: [¶] 1. Petitioners' requested relief would substantially prejudice the Bureau's rights. The water rights order which petitioners seek to vacate (WR 95-6) modifies the Bureau's existing water right permits for the Central Valley Project ('CVP'). To set aside that order would strip the Bureau of many of its current permit rights and impede the Bureau's CVP operations; [¶] 2. The Court concurs with respondents that *Sierra Club, Inc.* v. *California Coastal Commission* [citation] is controlling [because 'set[ting] aside, vacat[ing], and rescind[ing]' the Bureau's permit 'would directly affect, and undoubtedly injure,' the Bureau's interests]; [¶] 3. The Court cannot grant petitioners' prayer and then tailor it in such a fashion to protect against prejudice to the Bureau. Contrary to petitioners' claim, the impact upon the Bureau would not be 'minor' and would, in fact, seriously disrupt its operations; [¶] 4. A judgment rendered in the Bureau's absence would not be adequate. Three of the petitioners have filed suit against the Bureau in federal court. That action involves some of the same issues raised in the instant case. Given the overlapping issues in the two courts, a judgment in this case, without the Bureau's presence, could result in contradictory legal obligations and generate further litigation among the parties and/or real parties in interest; [¶] 5. Petitioners have an adequate remedy in the pending federal action. While not all issues will be addressed, the Court concurs with respondents' analysis in terms of the focus of the relief requested by petitioners. In that vein, the federal action can remedy the alleged misconduct; and [¶] 6. Given the nature of the rights and responsibilities involved, the Bureau's interests cannot be adequately represented by the State of California. The Bureau and the State have different water rights, own and operate different project facilities, and are governed by different laws and regulations. Moreover, WR 95-6 modifies the water right permits of the Bureau and State in different respects. Consequently, each entity is affected differently by that order. . . . [The court therefore] rule[s] that the United States Bureau of Reclamation is

an indispensable party to this litigation under Code of Civil Procedure section 389 which cannot be joined in this action because of the sovereign immunity of the United States . . . . This action shall be, and hereby is, dismissed without prejudice . . . ."

■ Since the trial court reviewed the propriety of the United States' participation in this action pursuant to the factors and considerations set forth in section 389, appellants attempt a "second bite at the apple" by claiming the law is "well-settled" we must review this determination de novo, citing *Save Our Bay, Inc.* v. *San Diego Unified Port Dist.* (1996) 42 Cal.App.4th 686 [49 Cal.Rptr.2d 847].[4] *Save Our Bay* indeed subjects such a determination to de novo review, which we find contrary to the available authority.

We first note the language of subdivision (b), section 389, refers to a determination "in equity and good conscience." "[T]he decision whether to proceed with the action in the absence of a particular party is one *within the court's discretion*, as governed by the various factors enumerated in subdivision (b) of section 389, Code of Civil Procedure." (*Sierra Club, Inc.* v. *California Coastal Com.* (1979) 95 Cal.App.3d 495, 500 [157 Cal.Rptr. 190], italics added; see also *Serrano* v. *Priest* (1976) 18 Cal.3d 728, 753 [135 Cal.Rptr. 345, 557 P.2d 929] ["in dealing with the doctrine of indispensable . . . parties 'we should . . . be careful to avoid converting a *discretionary power* or a rule of fairness in procedure into an arbitrary and burdensome requirement which may thwart rather than accomplish justice' "], italics added, and fn. omitted; *Kraus* v. *Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 368 [140 Cal.Rptr. 744] ["[i]t is for *discretionary and equitable reasons*, not for any want of jurisdiction, that the court may decline to proceed without the absent party"] (italics added)].) It makes no sense to grant the trial court an expressly discretionary power to balance the equities, then reject the court's evaluation out of hand and balance the equities anew.

We additionally note the California Legislature amended section 389 in 1971 to conform to rule 19 of the Federal Rules of Civil Procedure (28 U.S.C.). (Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc. (1973 ed.) § 389 ["[s]ection 389 is revised to substitute practically in its entirety Rule 19 of the Federal Rules of Civil Procedure for former Section 389. The words 'without prejudice' have been added to the language of the

---

[4]Appellants also cite *Cox* v. *County of San Diego* (1991) 233 Cal.App.3d 300, 306 [284 Cal.Rptr. 266], probably because this was the authority cited by *Save Our Bay.* (*Save Our Bay, Inc.* v. *San Diego Unified Port Dist., supra,* 42 Cal.App.4th at p. 692.) However, *Cox* did not address section 389 or indispensable parties; *Cox* involved a grant of summary judgment.

Federal Rule in subdivision (b) of Section 389 merely to avoid any contrary implication that might be created by the omission of the somewhat similar provision formerly found in Section 389. . . . [¶] . . . [¶] . . . Accordingly, the explanatory note prepared by the Advisory Committee in conjunction with the amendment of Rule 19 in 1966 is particularly helpful in describing the nature and effect of Section 389"]; see also *Serrano* v. *Priest, supra*, 18 Cal.3d at p. 753, fn. 27 [section 389 was "enacted in 1971 to conform ours to the federal practice . . . ."].)

Due to the amendment of section 389 to conform to Federal Rules of Civil Procedure, rule 19, the California courts have noted the propriety of using federal precedents " 'as a guide to application of the statute. . . .' " (*Kraus* v. *Willow Park Public Golf Course, supra*, 73 Cal.App.3d at p. 368, fn. 9, citation omitted; *Conrad* v. *Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 237, 241 [120 Cal.Rptr. 803].) In the federal courts, "[a] district court's determination of indispensability under [Federal Rules of Civil Procedure,] Rule 19(b) is reviewed for an abuse of discretion."[5] (*Thunder Basin Coal* v. *Southwestern Public Service* (10th Cir. 1997) 104 F.3d 1205, 1210; see also *Burka* v. *Aetna Life Ins. Co.* (D.C. Cir. 1996) 87 F.3d 478, 483 [318 App.D.C. 244]; *Sindia Expedition* v. *Wrecked & Abandoned Vessel* (3d Cir. 1990) 895 F.2d 116, 121; *Walsh* v. *Centeio* (9th Cir. 1982) 692 F.2d 1239, 1242.)

The determinations under subdivision (b) "must be based on fact-specific considerations. [Citation.] These determinations are anything but pure legal conclusions. . . . [T]hey involve the balancing of competing interests and must be steeped in 'pragmatic considerations.' " (*Travelers Indemn. Co.* v. *Dingwell, supra*, 884 F.2d at p. 635.) The latitude inherent in subdivision (b) renders the determination "more in the arena of a factual determination than a legal one." (*Envirotech Corp.* v. *Bethlehem Steel Corp.* (2d Cir. 1984) 729 F.2d 70, 75.) "The rule calls for a pragmatic decision based on practical considerations in the context of a particular litigation. . . . [T]he district court has 'substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations in deciding whether the action should go forward.' " (*Kickapoo Tribe of Indians in Kansas* v. *Babbitt*

---

[5]The instant case implicates the standard of review only as to subdivision (b) of section 389, and by analogy, rule 19(b) of the Federal Rules of Civil Procedure. This case does not raise, and we do not address, the appropriate standard of review for determinations under subdivision (a) of section 389. (See *Travelers Indemn. Co.* v. *Dingwell* (1st Cir. 1989) 884 F.2d 629, 635 [some courts have questioned whether rule 19(a) determinations are reviewed de novo, but "[n]o Circuit has explicitly decided to review Rule 19(b) determinations under a *de novo* standard of review"].) Since the *Dingwell* decision, it appears only the Sixth Circuit, which *Dingwell* characterized as indicating "no preference" as to the appropriate standard of review, has explicitly subjected rule 19(b) determinations to a de novo standard. (See *Keweenaw Bay Indian Community* v. *State* (6th Cir. 1993) 11 F.3d 1341, 1346.)

(D.C. Cir. 1995) 43 F.3d 1491, 1495 [310 App.D.C. 66].) The trial judge, who is " 'closer to the arena,' " is usually better situated than an appellate panel " 'to survey the practicalities involved in the litigation.' " (*Walsh* v. *Centeio, supra,* 692 F.2d at p. 1242.) " 'The [district] court's trial management "should not be impeded by second guessing at the appellate level except in those rare instances when a clear abuse of discretion is firmly shown." ' " (*Interspiro USA, Inc.* v. *Figgie Intern. Inc.* (Fed. Cir. 1994) 18 F.3d 927, 932.)

Accordingly, we review the trial court's determination for an abuse of discretion, and find none. Appellants, at least implicitly, acknowledge the trial court evaluated the section 389, subdivision (b), factors. However, appellants attempt to "retry" their case on appeal, asking us to reweigh subdivision (b)'s discretionary factors in order to yield a different result. In essence, appellants' brief explains how the discretionary factors *could be* balanced to permit their lawsuit to proceed, but have not demonstrated why these factors *must* be balanced in this fashion. Appellants have not shown why the trial court, by balancing the requisite factors and reaching a different result, i.e. concluding the action should not proceed, thereby abused its discretion.

By their own characterization, appellants deem as "the most important fact" the potential denial of a remedy. However, in reading appellants' arguments closely, appellants do not claim they are otherwise "without a remedy," but merely fear they *could be* without a remedy should challenges to the federal proceedings prevail. Citing *Vanoni* v. *County of Sonoma* (1974) 40 Cal.App.3d 743 [115 Cal.Rptr. 485], appellants attempt to recast the case law to render the remedy factor dispositive, stating the "inadequacy of a remedy in state court *alone* is sufficient justification for a court to hold that in 'equity and good conscience' the action should proceed without the United States."[6] (Italics in original.) However, appellants fail to note a trial court's determination whether in "equity and good conscience" an action should proceed or should be dismissed is based on the particular facts posed in a particular case after evaluating all of the section 389, subdivision (b) factors. Depending on the particular case, a trial court might well decide although three factors favor dismissing the action, the strength of a fourth factor indicates the action should proceed—or vice versa. This, however, is not such a case.

---

[6]*Vanoni* is less than compelling authority in this regard. *Vanoni*'s analysis, in its entirety, reads as follows: "[A]ppellants here would be left with no remedy in the state courts if their action were dismissed for nonjoinder of the United States. Because section 389 of the Code of Civil Procedure directs that one factor to be considered by the court is whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder, 'equity and good conscience' suggest that the action should proceed." (40 Cal.App.3d at p. 747.)

■ Section 389, subdivision (b), leaves the judge "with substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations in deciding whether the action should go forward in the absence of someone needed for a complete adjudication of the dispute." (See 7 Wright et al., Federal Practice and Procedure (2d ed. 1986) § 1604, p. 66.) Under appellants' interpretation, the unavailability (or in appellants' instance, the possible unavailability) of an alternative forum would always be determinative, outweighing the other three statutory considerations. This is not the law. (See *Quileute Indian Tribe* v. *Babbitt* (9th Cir. 1994) 18 F.3d 1456, 1460 ["although there exists no alternative forum . . . , that factor alone does not outweigh the other three factors"]; *Shermoen* v. *United States* (9th Cir. 1992) 982 F.2d 1312, 1319 [accord]; *Confederated Tribes* v. *Lujan* (9th Cir. 1991) 928 F.2d 1496, 1500 [" 'lack of an alternative forum does not automatically prevent dismissal of a suit' "].)

The availability of an "adequate remedy" is one, but only one, factor which the trial court evaluates in making its determination. Each case turns on its facts. To deem the unavailability of an alternative forum a conclusive factor in all cases and circumstances would, in effect, rewrite the statute, because the statute directs the court to consider all four factors in making this determination. (Cf. *Piper Aircraft Co.* v. *Reyno* (1981) 454 U.S. 235, 249-250 [102 S.Ct. 252, 262-263 70 L.Ed.2d 419] [discussing the factors considered for forum non conveniens and concluding, "we [will] not lay down a rigid rule to govern discretion . . . . If central emphasis were placed on any one factor, the . . . doctrine would lose much of the very flexibility that makes it so valuable"].)

■ Moreover, in this case, we are not convinced appellants lack an alternative forum.[7] The trial court found: "Three of the petitioners have filed suit against the Bureau in federal court. That action involves some of the same issues raised in the instant case. . . . Petitioners have an adequate remedy in the pending federal action. While not all issues will be addressed, the Court concurs with respondents' analysis in terms of the focus of the relief requested by petitioners. In that vein, the federal action can remedy the alleged misconduct."

---

[7]Appellants complain they may lack an alternative forum because they cannot bring precisely the same claims in the federal court. This is not the standard. As the trial court's ruling acknowledges, appellants cannot bring all of the same claims in the federal case. However, the standard is whether appellants have an "adequate remedy," not whether all issues are identical. As discussed herein, the federal case challenges the Bureau's Central Valley Project operations and seeks to change the Bureau's operations of New Melones and the Central Valley Project to make more water available to appellants, which is the same general type of relief sought in the instant case.

The record contains the complaint filed in the federal action. This complaint alleges the Bureau "reallocate[d] 200,000 acre feet from the New Melones Unit, directly taking the water from users on the Stanislaus River in favor of uses and purposes in the California Central Valley," "did not require any releases or bypass flows from other CVP projects capable of releasing water to the San Joaquin River and continued to export water for uses in the Central Valley during the period of reallocation from the New Melones Project. [The Bureau] ignored and failed and refused to consider allocating water from other CVP projects capable of releasing water to reach the San Joaquin River and the Sacramento/San Joaquin Bay-Delta Estuary." The complaint also alleges the Bureau "reallocat[ed] . . . approximately 127,000 acre-feet from the New Melones Unit for the purpose of benefitting fish and wildlife and for the use of this water outside of the place of use provided for in the permits issued for the New Melones Unit . . . ." Among the 14 remedies sought in the prayer for relief are temporary, preliminary, and permanent injunctions "prohibiting the BUREAU from depriving [plaintiffs] of their vested rights to a supply of water" and "prohibiting . . . the BUREAU from *reallocating water from the New Melones Project* under the CVPIA to any purpose of use or place of use outside of the purpose or place *authorized by the permits issued by the California State Water Resources Control Board* and to prohibit [the Bureau] from storing or refusing to release water [for any use] not authorized by the current purpose of use or outside the place of use *authorized by said permits* . . . ." (Italics added.)

There is sufficient similarity in the general types of relief sought in the federal and state actions to support the trial court's conclusion appellants have an adequate remedy in the pending federal action.[8]

In appellants' two remaining arguments, they again attempt to "retry" their case: Appellants contend the Bureau need not be joined because "an

[8]Referring to matters outside the record, appellants argue they lack an adequate remedy in the federal court action because the state subsequently asserted Eleventh Amendment immunity against new complaints filed by appellants both in that federal court action and in a new federal court lawsuit. Appellants filed these new complaints *after* the trial court dismissed the instant action. The trial judge is not Nostradamus, nor is the trial judge expected to monitor the various federal court actions and reevaluate indispensable party determinations to guarantee appellants a perfect alternative forum. The trial court evaluates the four factors as they exist at a particular point; there are no ironclad assurances, nor could there be. An alternative forum could fail to provide a remedy for any number of substantive or procedural reasons. This is not to say the lack of an "adequate remedy" in federal court is insignificant; indeed in some instances the state trial court may conclude the lack of an alternative forum outweighs the other three factors set forth in section 389, subdivision (b). However, as explained above, the trial court's determination pursuant to section 389, subdivision (b), involves the balancing of competing considerations at a particular point in time. No one factor is conclusive under all circumstances, and the determination is not revisited in light of subsequent events.

adverse judgment will not prejudice the United States,"[9] the other defendants can "ably argue in the interests of the [Bureau], because the affect [*sic*] of the relief would be the same on both parties,"[10] and "relief may be shaped to avoid any prejudice caused to the United States."[11] The trial court conscientiously examined these factors, and reached exactly the opposite conclusions. Appellants' argumentative contentions are simply inadequate bases for reversal of the trial court's reasoned balancing of the discretionary factors.[12]

---

[9]As part of this argument, appellants contend: "The trial court incorrectly concluded that should the Appellants . . . receive the requested relief, vacating WR 95-6, it would result in stripping the Bureau of many of its current permit rights and impede the Bureau['s] CVP operation." Appellants characterize the trial court's error as failing to recognize "[w]ithout the modifications to the permit, the operations of the CVP and SWP would continue, unchanged." If appellants lost, thereby leaving WR 95-6 intact, the Bureau's operations would continue unchanged. However, if appellants prevailed, thereby rescinding WR 95-6, the Bureau would lose certain rights under the permits. We cannot deem the loss of current rights as nonprejudicial simply because the Bureau would not lose all water rights but would instead revert back to the rights it held previously.

[10]Appellants point to various similarities regarding the application of particular provisions in WR 95-6 to the Bureau and the state, and similarities in export pumping restrictions. Appellants also note: "While the parties operate separately owned facilities, they also jointly own facilities which are operated according to a formal written coordinated operating agreement." However, the trial court expressly found: "The Bureau and the State have different water rights, own and operate different project facilities, and are governed by different laws and regulations. Moreover, WR 95-6 modifies the water right permits of the Bureau and State in different respects. Consequently, each entity is affected differently by that order." The trial court clearly found the differences outweighed the similarities, and we defer to this finding.

[11]In this argument, appellants contend the Bureau "will be able to protect its 'direct' interest in the permits in any subsequent hearing on the Petition for Change." This has no bearing on the ability of the Bureau to protect its interests in the instant litigation. If appellants were to prevail, the Bureau would suffer a restriction on now-existing rights. The fact it might regain those rights after subsequent hearings is not a manner in which the trial court can tailor relief, i.e., upholding or rescinding WR 95-6. *Appellants sought relief directly against the Bureau.* The petition prayed for preliminary and permanent injunctions "restraining . . . Real Parties in Interest." By seeking to invalidate WR 95-6, appellants sought to take away changes to the Bureau's water rights permits, which directly affect the operations of the Central Valley Project. Appellants' assertions an adverse judgment would not prejudice the Bureau are preposterous.

[12]Two additional arguments posed in appellants' opening brief require brief mention. Appellants assert the Bureau "holds only legal title to the water" and "has no substantial interest in the water," emphasizing the Bureau "uses no water." The argument is highly misleading: the fact the Bureau does not consume water is not synonymous with having no substantial interest in the water. The Bureau has appropriative water rights in the Central Valley Project. (*United States* v. *State Water Resources Control Bd.* (1986) 182 Cal.App.3d 82, 106 [227 Cal.Rptr. 161].) The Bureau owns the Central Valley Project facilities, has operational control and responsibilities relating to flood control, water supply, power generation, and fish and wildlife mitigation. The Bureau has substantial property rights in its water

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Sparks, Acting P. J., and Morrison, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 30, 1997. Baxter, J., did not participate therein.

---

rights permits, whereby the Bureau diverts, transports, and stores water. The Bureau clearly has a substantial interest in this litigation.

Appellants also essentially seek to create a new, determinative, factor. They argue: "In instances where the [indispensable party] rule has been applied [to dismiss an action], plaintiffs have typically failed to provide an acceptable excuse for *slow and negligent conduct in naming the defendants or real parties in interest.* Here, in contrast, the Appellants *timely named* the United States . . . ." (Italics added.) The only case cited for this proposition is *Sierra Club, Inc.* v. *California Coastal Com., supra,* 95 Cal.App.3d 495. *Sierra Club* did not employ timeliness as an additional factor. Rather, timeliness was an issue in *Sierra Club* because the plaintiff failed to join a particular individual before the statute of limitations ran, and thus the individual "could not be made a party" to the action. (*Id.* at p. 502; see § 389, subd. (b) ["[i]f a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience . . . ."].)