Filed 7/17/24  Bank v. America Data Services CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| HANMI BANK,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>AMERICA DATA SERVICES LLC et al.,<br><br>      Defendants and Appellants. | B326850<br><br>(Los Angeles County Super. Ct. No. 21STCV04609) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Zarmi Law and David Zarmi for Defendants and Appellants.

Buchalter, Robert M. Dato, Mark M. Scott and Adeline R. Tungate for Plaintiff and Respondent.

Appellants American Data Services LLC (ADS) and its managing member, James Shiau (collectively appellants), were defendants in this action for breach of a finance agreement and guaranty brought by respondent Hanmi Bank (Hanmi).[1]  The trial court granted summary judgment in favor of Hanmi and entered judgment in the amount of $101,870.82 against ADS and Shiau, jointly and severally, plus costs and attorney fees.  Hanmi was also awarded certain personal property (computer equipment), proceeds of the sale of which were to be used to reduce the amount owed by appellants.

Appellants argue the trial court erred in granting summary judgment to Hanmi because there were triable issues of material fact as to fraud in the inducement of the loan by certain brokers who negotiated the terms of the loan with the original lender, which assigned the loan to Hanmi.  Appellants further argue the trial court erred in declining to join the seller of the computer equipment as an indispensable party.

We find no error and affirm the judgment.

## FACTUAL BACKGROUND[2]

In January 2019, ADS entered into an agreement with Salamander Technologies, LLC (Salamander) to purchase computer equipment for a national public safety telecommunications system for first responders.

---

[1]  Shiau is sometimes referred to in the record as "Jimmy Mou Kei Shiau."

[2]  Because the matter comes to us after a grant of summary judgment, we view the facts in the light most favorable to appellants, who were the losing party below.  (*Elk Hills Power, LLC v. Board of Equalization* (2013) 57 Cal.4th 593, 606.)

Shiau negotiated financing from Targeted Lease Capital, LLC (TLC) on behalf of ADS through unlicensed brokers George Ravera of Equipment Finance Group and Barry Longwater of Advis Capital.  Prior to working with them, Shiau signed a noncircumvent agreement with the brokers, agreeing not to contact TLC directly in return for the brokers signing a nondisclosure agreement.  As a result, Shiau had no contact with TLC and had to rely on the representations made by the brokers.

During negotiations, Salamander provided a letter to Longwater, which provided, in part:  "If it adds more comfort to your financial partners, we would be willing to take over the monthly payments owed so that the lending institution you are partnering with will be made whole in the event of default for whatever reason.  [¶]  . . .  [¶]  Let it therefore be know [*sic*] that in the case of a default from the payment of the client, we will take back the product and take over the monthly payments."  The letter was signed by the chief strategy officer of OrangeHook, Inc., which is the parent company of Salamander.[3]

According to Shiau's declaration, the remarketing letter was sent to and accepted by TLC.  Shaiu represented he "specifically asked the brokers if [TLC] had seen the Remarketing [letter] and accepted it."  In response, Shiau was told, "*if the lenders have a personal guarantee from you or an organization like Salamander, who do you think they would go to under a default?*"  The brokers "informed" Shiau and ADS that TLC

---

[3]     Appellants refer to the letter as "the [r]emarketing [a]greement."  The letter is not properly characterized as an agreement as it lacked mutual consent and contained only one signature.  We will therefore refer to it as the "remarketing letter."

"received and accepted Salamander's Remarketing [letter], and that return of the equipment to Salamander would relieve [appellants] of the obligations under the equipment financing loan."

On May 20, 2019, Salamander produced an invoice for $70,923.38 for the equipment ADS needed to purchase for the project. On May 30, 2019, ADS signed an equipment finance agreement (loan or loan agreement) with TLC to borrow the $70,923.38. To secure the loan, ADS provided TLC with a security interest in the equipment. ADS agreed to make 36 monthly payments in the amount of $2,783.15, plus applicable taxes and insurance. The loan agreement further provided that late charges would accrue on any payment not paid when due, and if ADS failed to make any payment when due or committed any other default, the lender could (1) declare ADS in default and exercise all of its rights and remedies under the agreement, (2) declare all unpaid payments and all future payments immediately due and payable, and (3) take possession of any or all equipment, wherever located, without a court order.

On June 2, 2019, ADS made an advance payment of $6,166.30 to Advis Capital, consisting of two months' payments and a $600 document fee. TLC paid the Salamander invoice in two payments on June 10 and July 25, 2019.

On August 22, 2019, TLC assigned all its rights in the loan agreement and the equipment to Hanmi.

ADS made another seven payments of $2,783.15 on the loan, with the last payment on March 5, 2020. Shortly thereafter, the COVID-19 pandemic hit and ADS's efforts to work with first responders was stymied.

4

Shiau contacted TLC and asked for COVID-19 relief on the loan. TLC presented an "Amendment to Agreement" (amendment) permitting ADS to make payments of $100 for three months, with monthly payments of $2,981.94 per month commencing on September 1, 2020. The amendment listed the lender as Hanmi. This was the first time ADS was notified of the assignment of the loan. Shiau signed the document and returned it to TLC. There was no counter signature to the amendment and ADS continued to make payments directly to TLC.

On October 27, 2020, a representative of TLC e-mailed ADS asking that ADS resolve the failure to make payments on the loan. ADS responded that Salamander had taken the equipment back and "we are working out with [Salamander] payments under the Remarketing agreement now. So one of us should get a payment out to you shortly."

On November 11, 2020, Hanmi sent a demand letter for $81,032.71 to ADS via Shiau, asserting that Hanmi was the holder of rights under the loan agreement.

## PROCEDURAL HISTORY

Hanmi filed a complaint against appellants on February 4, 2021, alleging breach of the loan agreement, recovery of personal property, conversion, and breach of guaranty. The third cause of action for conversion was voluntarily dismissed by Hanmi.

Hanmi filed a motion for summary judgment on April 8, 2022. Hanmi argued the facts were undisputed in the case; the loan was enforceable; and the damage calculation was objectively quantifiable.

Appellants filed an opposition on June 10, 2022. Among other things, appellants argued fraud in the inducement of the

5

loan agreement on the ground that TLC, Hanmi's assignor, had no intention of honoring the remarketing letter or the terms of the invoice. In addition to this fraud, TLC used unlicensed brokers to negotiate the terms of the loan agreement. Appellants pointed out that Salamander took the equipment back and was thus an indispensable party to Hanmi's second cause of action for return of personal property.

Following Hanmi's reply and supplemental briefing, the trial court held a hearing on October 26, 2022. On November 16, 2022, the trial court entered judgment on the matter in favor of Hanmi. Appellants were jointly and severally liable for $101,870.82 plus costs and attorney fees. In addition, Hanmi was to recover possession of the computer equipment, and if sold, the proceeds of such sale would reduce the amount owed by appellants under the judgment.

On December 16, 2022, appellants filed a motion for new trial, arguing the court failed to rule on its evidentiary objections, failed to admit parol evidence of fraudulent inducement, failed to allow appellants to assert affirmative defenses, and awarded excessive damages.

The court denied the motion. On January 12, 2023, the court issued a written order, noting it considered and rejected the remarketing letter as a defense to Hanmi's summary judgment motion. Furthermore, fraud in the inducement is an affirmative defense, which appellants did not plead in their answer, therefore it could not be pursued in opposition to summary judgment. In addition, there was no evidence Hanmi made any fraudulent misrepresentations or that any fraudulent misrepresentations were made by anyone authorized to speak on Hanmi's behalf. As to the failure to name Salamander as an indispensable party, the

6

court "rejected the argument that [Hanmi] should have sought redress against a third party when it had no legal obligation to do so."

On February 10, 2023, appellants filed their notice of appeal from the judgment.

## DISCUSSION

### I.    Applicable law and standards of review

Summary judgment is proper where "there is no triable issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)  On appeal from a grant of summary judgment, we review the record de novo to determine whether any triable issues of fact compel reinstating the action.  (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.)  We need not defer to the trial court's reasoning, but may affirm the summary judgment if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons.  (*Martin v. Board of Trustees of California State University* (2023) 97 Cal.App.5th 149, 161.)

A court's decision as to whether a party is indispensable to an action is reviewed for abuse of discretion.  (*County of San Joaquin v. State Water Resources Control Bd.* (1997) 54 Cal.App.4th 1144, 1151.)

### II.    No triable issue of fact

The trial court granted summary judgment to Hanmi, finding the parties entered into an enforceable loan agreement and Hanmi's assignor fully performed.  Appellants defaulted on

7

the loan agreement and failed to comply with the terms of the loan agreement.

Appellants argue that the trial court erred in granting summary judgment because triable issues of fact existed as to whether appellants had a defense that the loan agreement was obtained by misrepresentations, and whether such misrepresentations could be construed against Hanmi.

Specifically, appellants point out that although Longwater and Ravera were unlicensed, TLC, as a state licensed lender, was liable for any misrepresentations made to appellants in connection with the loan. (Fin. Code, § 22602, subd. (b).) Appellants do not articulate the exact words of the alleged misrepresentations, but appear to argue that the brokers led appellants to believe that TLC "accepted" Salamander's remarketing letter and agreed it would pursue Salamander before suing appellants. Therefore, according to appellants, the remarketing letter was an integral part of the loan agreement. When a loan is assigned, the assignee steps into the shoes of the original lender. (Citing *Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 287.) Thus, appellants argue, there was a triable issue of fact as to whether appellants could assert the provisions of the remarketing letter to defend against Hanmi.[4]

---

[4] The parties disagree as to whether appellants were permitted to raise this affirmative defense for the first time in opposition to summary judgment, as appellants did not assert fraudulent inducement as a defense at any time prior to opposing Hanmi's summary judgment motion. (See, e.g., *California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3 ["A party may not oppose a summary judgment motion based on a

8

There is no triable issue of fact as to whether appellants can assert the remarketing agreement against Hanmi. The remarketing letter does not, as a matter of law, alter the terms of the loan agreement. When there is no material conflict in the evidence, courts interpret a contract as a matter of law. (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 433.) Appellants point to no material conflict in the evidence as to the circumstances surrounding the creation of the remarketing letter. The letter was sent from the chief strategy officer of OrangeHook, Inc., the parent company of Salamander, to Longwater, one of the brokers. The letter expresses that its purpose is to let Longwater know that Salamander "stand[s] fully behind [its] product" and has "a countless array of clients that we can very quickly remarket the product to in the event [ADS] is unable to make the payments." The letter then states, "*If* it adds more comfort to your financial partners, *we would be willing* to take over the monthly payments owed so that the lending institution you are partnering with will be made whole in the event of default for whatever reason." (Italics added.) There is no evidence that this "willingness" was ever reduced to a formal binding agreement between any parties to the loan agreement. Nor was it reduced to a formal binding agreement between appellants and Salamander. It is a unilateral letter, signed by one party, lacking the essential

---

claim, theory, or defense that is not alleged in the pleadings."]; but see also *Nieto v. Blue Shield of Cal. Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 75 ["an affirmative defense may be raised for the first time in a summary judgment motion absent a showing of prejudice"].) We decline to address this issue, as we find that even if considered, appellants' affirmative defense must fail as a matter of law.

elements of contract formation such as mutual assent and sufficient consideration.  (Civ. Code, § 1550.)  In short, the letter has no legal binding effect on any individual or entity.  Any claim by Shiau that he understood the remarketing agreement to amend the loan agreement is undermined by the language of the loan agreement, which specifically provides, "This Agreement contains the entire agreement between you and us, and it may not be altered, modified, terminated or otherwise changed except in writing by both of us."  The remarketing letter is not a legal alteration of the loan agreement and may not be interpreted as such.

Nor can appellants claim that they acted based on fraudulent misrepresentations concerning the remarketing letter.  The elements of fraudulent misrepresentation are a misrepresentation, knowledge of falsity, intent to defraud, justifiable reliance, and resulting damage.  (*Anderson v. Deloitte & Touche* (1997) 56 Cal.App.4th 1468, 1474.)  First, appellants have not been clear about any specific misrepresentations made by the brokers.  The remarketing letter was written by a representative of Salamander, with one broker as a recipient— not an author.  While Shiau represents he was informed that TLC "accepted" the letter, there is no evidence that TLC specifically agreed to pursue Salamander before it pursued appellants for missed payments.[5]  In fact, when Shiau sought

[5]     Shiau's representation that he was informed that TLC "accepted" the letter arguably violates the parol evidence rule, which prohibits evidence of representations that are contrary to the terms of a written contract that was intended to be a complete and final statement of the parties' agreement.  (Code Civ. Proc., § 1856.)  Hanmi objected to Shiau's declaration on this

10

assurance that TLC would pursue Salamander for any default, one of the brokers—it is not clear which one—responded with a question: "*if the lenders have a personal guarantee from you or an organization like Salamander, who do you think they would go to under a default?*"  Any reliance on these vague representations of the brokers was patently unreasonable.  To the extent that appellants relied on the remarketing letter for assurance that Salamander, not appellants, would be sued for any default, such reliance was also patently unreasonable, as the remarketing letter created no legal obligation as to any individual or entity and did not alter the loan agreement.  Appellants have not shown that there exists a triable issue of material fact as to fraudulent inducement.

The remarketing letter created no legal obligation on the part of TLC or its assignee, Hanmi, to pursue Salamander for payment before pursuing appellants.  No triable issue of fact exists supporting appellants' theory that Hanmi should be imputed to have "accepted" the remarketing agreement or can legally be held to its words.  Appellants have also failed to raise a triable issue of fact as to fraudulent inducement by the brokers, as they have failed to articulate specific misrepresentations or reasonable reliance.  Thus, summary judgment in Hanmi's favor was properly sustained.[6]

---

ground, but the trial court failed to rule on the objection.  Thus, we consider it part of the record on appeal.  (Code Civ. Proc., § 437c, subd. (q).)

[6]      The parties disagree as to the enforceability of the waiver of defenses provision of the loan agreement, which provided: "We may sell, assign or transfer this Agreement or any part of it

## III. Indispensable party

Appellants argue that the judgment must be reversed because Hanmi failed to join Salamander as an indispensable party to the action. "'A person is an indispensable party if his or her rights must necessarily be affected by the judgment.'" (*Save Our Bay, Inc. v. San Diego Unified Port Dist.* (1996) 42 Cal.App.4th 686, 692.) "'Failure to join an "indispensable" party is not "a jurisdictional defect" in the fundamental sense; even in the absence of an "indispensable" party, the court still has the power to render a decision as to the parties before it which will stand.'" (*Id.* at p. 693.) The trial court's determination as to whether a party is indispensable is reviewed for abuse of discretion. (*County of San Joaquin v. State Water Resources Control Bd., supra*, 54 Cal.App.4th at p. 1151.)

and/or our interest in the Collateral without notifying you and you agree that if we do, the new Lender will have the same rights and benefits that we now have, but will not have to perform any of our Obligations pursuant to this Agreement. You agree that the rights of the new Lender will not be subject to any claims, defenses or setoffs that you may have against us or the Vendor." Shiau initialed the page containing this provision and signed the loan agreement, thereby consenting to its terms. While such provisions are enforceable under California Uniform Commercial Code section 9403, certain exceptions are laid out in California Uniform Commercial Code section 3305, including "fraud in the inducement." (*Wells Fargo Bank Minnesota, N.A. v. B.C.B.U.* (2006) 143 Cal.App.4th 493, 504; see Cal. U. Com. Code, § 3305, subd. (a)(1)(C).) We find that we need not determine whether this provision of the loan agreement is enforceable in this matter, as the remarketing letter does not, as a matter of law, affect the contractual relationship between the parties, nor have appellants raised a triable issue of material fact as to fraudulent inducement.

Under Code of Civil Procedure section 389, a party should be joined in litigation if "(1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."  If a party fits one of the above descriptions, the trial court then determines whether the party is indispensable.  (*City of San Diego v. San Diego City Employees' Retirement System* (2010) 186 Cal.App.4th 69, 83.)

In determining whether a party is indispensable to litigation, the trial court considers the following factors: "'(1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder.'" (*City of San Diego v. San Diego City Employees' Retirement System, supra*, 186 Cal.App.4th at pp. 83-84.)  After considering these factors, the court must "'determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable.'" (*Id.* at p. 83.)

13

When there is a defect or misjoinder of parties to litigation, the party against whom the complaint has been filed may object, by answer or demurrer. (Code Civ. Proc., § 430.10, subd. (d).) Appellants here filed no such objection, either in their answer or by way of demurrer. Further, appellants could have filed a complaint or cross-complaint naming an indispensable party pursuant to Code of Civil procedure section 389, and were entitled to move to dismiss the matter under that statute. (See, e.g., *Union Carbide Corp. v. Superior Court* (1984) 36 Cal.3d 15, 19-22.) Appellants took no such action, nor do they address these procedures in their briefing to this court. Although an objection to nonjoinder of an indispensable party may be made at any time, the court may consider what measure the complaining party itself took to avoid prejudice. (*Kraus v. Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 370, fn. 11.) Appellants point to their opposition to Hanmi's motion for summary judgment as the first time they raised the issue of Salamander as a potential indispensable party.

In support of their position that Salamander is an indispensable party, appellants argue that Hanmi was aware that TLC had accepted the remarketing letter and that ADS had returned the equipment to Salamander pursuant to that letter and the terms of the invoice. Appellants cite no legal authority suggesting that these facts render Salamander an indispensable party. Further, appellants fail to articulate how the joinder of Salamander would create a triable issue of material fact as to appellants' obligations under the loan agreement. As set forth above, the terms of the loan agreement were not affected by the remarketing letter as a matter of law. Hanmi was not required to seek redress against Salamander, as Salamander had no legal

14

obligations under the loan agreement, and Hanmi had no legal relationship with Salamander.  The trial court did not abuse its discretion in declining to consider Salamander an indispensable party.

## DISPOSITION

The judgment is affirmed.  Each party will bear their own costs of appeal.


_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
HOFFSTADT, J.